MICHAEL PINTO, an Infant, by His Mother and Natural Guardian, PAMELA PINTO, et al., Respondents, v ROBERT HOUSE et al., Defendants, and ST. MARY'S HOSPITAL OF SYRACUSE, NEW YORK, INC., Appellant.

First Department, March 10, 1981

APPEARANCES OF COUNSEL

*Joseph J. Buderwitz, Jr.*, of counsel *(Anthony J. Caputo* with him on the brief; *Anthony J. Caputo, P. C.*, attorney), for appellant.

*Stuart D. Schwartz* of counsel *(Julien Schlesinger & Finz, P. C.*, attorney), for respondents.

**OPINION OF THE COURT**

MURPHY, P. J.

In this medical malpractice action, plaintiffs seek to recover damages for maltreatment attending the birth of the

infant plaintiff at St. Mary's Hospital (the Hospital) in Syracuse on January 27, 1970. The principal question presented upon this appeal is whether the plaintiffs have obtained jurisdiction over the Hospital. Since there is an indication that the 10-year Statute of Limitations may have run on January 27, 1980 (CPLR 208), this court must scrutinize the record very carefully to determine whether jurisdiction exists over the Hospital.

The Hospital is a domestic not-for-profit corporation. On January 9, 1980, the plaintiffs served the original summons and complaint upon Monsignor (Msgr.) Fahey on behalf of the Hospital. Plaintiffs also served Tim Connor, an associate director of Catholic Charities, in their attempt to obtain jurisdiction over the Hospital. In the original summons and complaint, reference was made to the Hospital as "St. Mary's Hospital of Syracuse". On January 15, 1980, plaintiff moved by order to show cause to permit service upon "St. Mary's Hospital of Syracuse, Inc." by serving Smith, Savik, Kendrick, McAuliffe & Schwarzer, P.C. (the Smith firm). The order to show cause was served solely upon the Smith firm in Syracuse.

Stuart D. Schwartz, an associate with Julien, Schlesinger & Fink, P.C., submitted an affirmation in support of plaintiffs' motion. Schwartz stated that Msgr. Fahey had been a director of the Hospital but that he had been informed by Mr. McAuliffe of the Smith firm that the board was no longer functioning. Schwartz also noted that the Hospital had been closed for several years and that it had no apparent agent of record to accept service. Schwartz' affirmation also indicated that McAuliffe was going to forward the original summons and complaint to the insurer when those papers were received from Msgr. Fahey. The Smith firm did not submit any papers in opposition to this motion.

On January 24, 1980, Special Term (CHANANAU, J.) granted plaintiffs' motion by default. In its order, Special Term directed that the supplemental summons and amended complaint be served by certified mail upon the Smith firm and by personal delivery to the Hospital's insurer, Aetna Life and Casualty Co. The supplemental summons and amended complaint were immediately served in accordance with Special Term's direction. The supplemental summons

and amended complaint were the same as the original summons and complaint save for the fact that the abbreviation "Inc." was added to the Hospital's name.

The Hospital did not serve a timely answer to the amended complaint. On February 29, 1980, Schwartz wrote to Aetna's counsel, Anthony J. Caputo, asking that an answer be forwarded within five days from that date. On March 7, 1980, the Hospital served its answer asserting a lack of personal jurisdiction because of improper service. Plaintiffs, on March 14, 1980, rejected the answer as untimely. They did, however, express a willingness to accept the answer if the affirmative defense based upon lack of jurisdiction were deleted.

On March 19, 1980, the Hospital moved by order to show cause to compel the acceptance of its answer and to dismiss the action for lack of personal jurisdiction. The Hospital's counsel, Caputo, stated in his supporting affirmation that neither the Smith firm nor Aetna were authorized to accept service in this proceeding. On March 21, 1980, plaintiffs cross-moved to strike the affirmative defense of lack of jurisdiction. Schwartz alleged in his supporting affirmation that McAuliffe had stated that he was willing to accept process on behalf of the Hospital. He also stated that he had given Caputo's secretary an extension to answer if Caputo did not challenge jurisdiction. The secretary purportedly replied that this seemed satisfactory. Essentially, Schwartz maintained that jurisdiction had been obtained over the Hospital since the law firm and the insurer had been served. Special Term (BLOUSTEIN, J.) directed that the answer be accepted but struck the affirmative defense. No reason was given by Special Term for its determination.

Preliminarily, it should be observed that the plaintiffs do not contend in their brief that jurisdiction was obtained over the Hospital by the service upon Connor of Catholic Charities. Therefore, that point needs no further exploration. Likewise, it should be noted that the Hospital's default was for a very brief period. Plaintiffs, in fact, did not oppose the vacation of the default but merely challenged the affirmative defense based upon lack of jurisdiction. Hence, Special Term (BLOUSTEIN, J.) properly excused the default

and deemed the answer served upon service of a copy of the order with notice of entry.

In accepting the answer, Special Term was thus presented with the issue as to the validity of the affirmative defense. It was plaintiffs' burden to show by a preponderance of the evidence that service upon the Hospital was valid *(Jacobs v Zurich Ins. Co.*, 53 AD2d 524, 525). The plaintiffs did not come forward with any proof in contravention of Caputo's denial that neither the Smith firm nor Aetna was authorized to accept service upon behalf of the Hospital. Even though the Smith firm might have represented the Hospital on prior matters, that fact could not be used as a predicate for jurisdiction in this case. *(State of New York v Cortelle Corp.*, 73 Misc 2d 352, 354, affd 43 AD2d 668, mod on other grounds 38 NY2d 83.) For this same reason, jurisdiction was not obtained by serving Aetna although it was the Hospital's insurer. Since there was no proof the Smith firm and Aetna were authorized to accept service, neither McAuliffe nor Caputo could waive any jurisdictional defense on behalf of the Hospital. Consequently, (i) the order to show cause, dated January 15, 1980, served upon the Smith firm and (ii) the supplemental summonses served upon the Smith firm and Aetna were ineffective vehicles for obtaining jurisdiction over the Hospital.

In passing, it should be observed that the Hospital's counsel also maintains that the supplemental summonses were improperly served pursuant to CPLR 308 (subd 5). Counsel correctly observes that CPLR 308 (subd 5) is limited to substituted service upon a natural person and that this controversy is governed by CPLR 311 (subd 1). Since Special Term (CHANANAU, J.) granted the order of January 24, 1980 upon default, there is no means of determining its rationale for permitting service on the Smith firm and Aetna. In the absence of any clear demonstration that Special Term relied upon CPLR 308 (subd 5) in reaching its decision, a discussion of that statute is purely speculative and, in this case, academic.

In this background, the critical issue of jurisdiction hinges upon whether the service upon Msgr. Fahey was

valid. The Hospital's attorney, Caputo, carefully avoids any statement as to whether Msgr. Fahey was authorized to accept service on January 9, 1980. Likewise, he does not volunteer any information as to the legal status of the Hospital and whether it has any agent authorized to accept service. In its brief, the counsel for the Hospital stresses that the original service was made upon an entity that does not exist. Counsel further contends that the original service upon Msgr. Fahey is now a nullity since it was superseded by the attempted service upon the Smith firm and Aetna.

The following discussion will be based upon the assumption that the Hospital had been legally dissolved and that Msgr. Fahey, as a former director, was authorized to be served in this subsequent proceeding (Not-For-Profit Corporation Law, § 1006, subd [a], par [4]). At any stage of an action, a court may permit a mistake, omission, defect or irregularity to be corrected upon such terms as may be just (CPLR 2001). If necessary, the court may permit that the pleadings be amended (CPLR 3025, subd [b]). Thus, if a corporate entity is served under an incorrect name, the court may permit this mistake to be cured if that corporate entity was fairly apprised that it was the party the action was intended to affect. *(Stuyvesant v Weil*, 167 NY 421, 426; *Richardson v Millard*, 58 Misc 2d 502, app dsmd 33 AD2d 820, rearg granted and order affd 33 AD2d 944; *Fiorella v Buffalo Park Lane Rest.*, 49 Misc 2d 518.) Although the original summons and complaint served upon Msgr. Fahey contained the misnomer "St. Mary's Hospital of Syracuse", there is little doubt that the actual entity involved, "St. Mary's Hospital of Syracuse, Inc.", received actual notice that it was the object of this suit. Therefore, this court may permit plaintiffs to correct that mistake in both the original summons and complaint.

Similarly, there is no merit to the Hospital's contention that the original service upon Msgr. Fahey was a nullity because it was superseded by the later service upon the Smith firm and Aetna. There is no need to serve a supplemental summons upon a party that has already been properly joined in the action. *(Patrician Plastic Corp. v Bernadel Realty*, 25 NY2d 599, 607; *Harlem Riv. Consumers Co-op. v Manufacturers Hanover Trust Co.*, 68 Misc 2d 608.) If

jurisdiction was obtained over the Hospital through the service upon Msgr. Fahey, the subsequent service upon the Smith firm and Aetna was superfluous and, in no way, invalidated the prior effective service upon Msgr. Fahey.

Summarizing, the service upon Msgr. Fahey was valid if he was authorized to accept process. However, plaintiffs did not definitively show that Msgr. Fahey was authorized to accept service on behalf of the Hospital. On the other hand, the Hospital's counsel never denied that Msgr. Fahey was authorized to accept such service. In this evidentiary posture, a hearing must be held to determine whether the service upon Msgr. Fahey was effective since he was a former director of the Hospital or was otherwise authorized to accept service.

Accordingly, the order of the Supreme· Court, Bronx County (BLOUSTEIN, J.), entered April 21, 1980, which directed acceptance of the answer but struck the affirmative defense based upon lack of jurisdiction, should be modified, on the law, by directing a hearing as to whether service upon Msgr. Fahey was effective and, as modified, should be affirmed, without costs.

SULLIVAN, MARKEWICH, LUPIANO and BLOOM, JJ., concur.

Order, Supreme Court, Bronx County, entered on April 21, 1980, modified, on the law, by directing a hearing as to whether service upon Monsignor Fahey was effective and as modified, affirmed, without costs and without disbursements.