**In the Matter of the Arbitration**

**between**

**WATERSPRING, S.A., as Owners,**

**and**

**TRANS MARKETING HOUSTON INC., as Charterer,**

**Under a Charter Party dated July 6, 1988, of the M.T. OCEANIA GLORY.**

**No. 89 Civ. 1121 (PKL).**

United States District Court, S.D. New York.

July 7, 1989.

Healy & Baillie, New York City, for Waterspring, S.A.; Glen T. Oxton, of counsel.

Baker & McKenzie, New York City, for Trans Marketing Houston, Inc.; Richard M. Ziccardi and Curtis E. Pew, of counsel.

### ORDER AND OPINION

LEISURE, District Judge:

Waterspring, S.A. ("Waterspring," "Owner," or "petitioner"), brought this petition, as Owner of the M.T. OCEANIA GLORY, for an order pursuant to Section 4 of Title 9, United States Code, compelling respondent, Trans Marketing Houston, Inc. ("TMHI," "Charterer," or "Owner"), as Charterer to proceed to arbitration before a panel comprised of Stephen H. Busch ("Busch"), Manfred W. Arnold ("Arnold") and Hammond L. Cederholm ("Cederholm"), in accordance with the terms and conditions of a certain contract of charter party allegedly entered into between petitioner and respondent. TMHI has crossmoved to vacate the partial final arbitration award dated December 5, 1988.

### FACTUAL BACKGROUND

A charter party agreement for the M/V COUNTESS, owned by Astor Marine S.A. and operated by Adriatic Tankers Shipping Company ("Adriatic"), was fixed on July 6, 1988 (the "Charter"). The fixture telex confirming the agreement incorporated the terms of a standard form charterparty commonly know as the Asbatankvoy form. The fixture telex also provided for arbitration in New York. The COUNTESS became delayed and the Charter was amended to change the vessel to the OCEANIA GLORY, owned by Waterspring, and operated by Adriatic. The amendment was confirmed by telex. Affidavit of Glen T. Oxton, Esq., sworn to on February 15, 1989 ("Oxton Affidavit"), Exhibit 37.

The OCEANIA GLORY carried cargoes for TMHI from Houston to Santo Tomas, Guatemala and Guayaquil, Ecuador, pursuant to the Charter. Discharging in Guayaquil was completed on September 8, 1988. On September 20, 1988, the Owner submitted an invoice for demurrage in the amount of $58,122. Oxton Affidavit, Exhibit 3. Subsequently, Charterer paid $88,-754.84 to Owner and withheld payment of the balance of $194,367 due to the alleged wrongful presentation of cargo documents by Owner. Oxton Affidavit, Exhibit 4.

As noted, the Charter is under the Asbatankvoy form, which provides for arbitration. Owner demanded arbitration, requested an immediate partial final award for freight and demurrage and appointed its arbitrator by a letter to Charterer sent by facsimile and mail on October 12, 1988. Oxton Affidavit, Exhibit 6. On October 25, 1988, Charterer requested time to discuss the merits of the dispute with its broker. Affidavit of Richard M. Ziccardi, Esq., sworn to on March 3, 1989 ("Ziccardi Affidavit"), Exhibit 5. On November 2, 1988, Owner, asserting that Charterer failed to appoint its arbitrator within 20 days as provided in Clause 24 of the Charter, appointed Manfred Arnold on Charterer's behalf. Oxton Affidavit, Exhibit 9. On November 10, 1988 Cederholm and Arnold appointed Busch as the third arbitrator and set the first hearing date for November 23, 1988. Oxton Affidavit, Exhibit 10.

On or about November 10, 1988, TMHI was advised by petitioner's counsel that an arbitration hearing had been scheduled for November 23, 1988 in New York City. Ziccardi Affidavit, Exhibit 9. TMHI retained counsel, who wrote to the arbitration panel on November 16, 1988, to request an adjournment. Ziccardi Affidavit, Exhibit 12. This counsel requested an extension of time from the panel on the grounds that the scheduled arbitration hearing was for the Wednesday before Thanksgiving making travel arrangements impossible and that retained counsel was previously scheduled to be in California on that day. This request was initially refused by the arbitration panel in New York, which then tied further consideration of such request to a demand for full security of the petitioner's claim. On November 22, 1988, Charterer attempted to appoint its arbitrator, Richard E. Repetto.

On December 5, 1988, the arbitration panel granted Waterspring a partial final arbitration award of $100,000. TMHI paid $100,000 to Waterspring. TMHI contends that this payment was based upon its own good faith determination that such amount was due and owing. Allegedly, the decision to pay this amount was made in advance of any knowledge on the part of TMHI of the contents of the partial final award dated December 5, 1988. Reply Memorandum of Law in Support of Counter–Motion to Vacate Partial Final Award at 4. Owner asserts it is still owed freight and demurrage aggregating $94,367.10 plus interest, costs and attorneys' fees.

## DISCUSSION

## MOTION TO COMPEL ARBITRATION

Petitioner presently seeks an order pursuant to Section 4 of Title 9, United States Code, compelling respondent, TMHI to proceed to arbitration before a panel comprised of Stephen H. Busch, Manfred W. Arnold and Hammond L. Cederholm, in accordance with the terms and conditions of the Charter allegedly entered into between petitioner and respondent. Respondent opposes the motion on various grounds.

### A. *Standing*

Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4 provides, *inter alia:*

A party *aggrieved* by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement.... (emphasis added).

Clause 24 of the charterparty at issue, provides in pertinent part as follows:

Either party hereto may call for such arbitration by service upon any officer of the other, wherever he may be found, of a written notice specifying the name and address of the arbitrator chosen by the first moving party and a brief description of the disputes or differences which such party desires to put to arbitration. If the other party shall not, by notice served upon an officer of the first moving party within twenty days of the service of such notice, appoint its arbitrator to arbitrate the dispute or differences specified, then the first moving party shall have the right without further notice to appoint a second arbitrator, who shall be a disinterested person with pre-

cisely the same force and effect as if said second arbitrator has been appointed by the other party. In the event that the two arbitrators fail to appoint a third arbitrator within twenty days of the appointment of the second arbitrator, either arbitrator may apply to a Judge of any court of maritime jurisdiction in the city above-mentioned for the appointment of a third arbitrator, and the appointment of such arbitrator by such Judge on such application shall have precisely the same force and effect as if such arbitrator had been appointed by the two arbitrators....

Oxton Affidavit, Exhibit 1.

TMHI urges that before seeking relief from this Court under the Arbitration Act, petitioner must exhaust its remedies under the arbitration agreement by proceeding with the arbitration to a conclusion, even though TMHI does not participate. Charterer contends that Waterspring is not a party aggrieved by a failure, neglect or refusal to arbitrate within the meaning of § 4 of the Act as it can proceed with an *ex parte* arbitration.

Petitioner, on the other hand, contends that before arbitration can continue, the Court must determine whether or not Waterspring is a party to the arbitration agreement, and whether the panel is properly constituted. It points out that, if it continues to go through with the arbitration, it may prove to be a nullity, and urges that this makes it an aggrieved party entitled to relief under the Act.

Section 4 of the Arbitration Act permits "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate" under a written arbitration agreement to petition the court to compel arbitration. The basic question here is whether or not the petitioner is a party who is aggrieved by a failure to arbitrate. Unless it is, it cannot maintain this proceeding.

The arbitration agreement at issue has a self-executing mechanism. It provides that, in the event the opposing party fails to appoint its arbitrator within 20 days, the moving party may then appoint a disinterested person as the second arbitrator. The two arbitrators are then to select a third arbitrator. Thus, in the event of failure of the opposing party to appoint an arbitrator the agreement entered into by the parties provides its own remedies. If this arbitration clause is properly invoked, a duly constituted panel is formed regardless of respondent's actions and without the need to resort to Federal Court intervention. Indeed, the very purpose of such a self-executing mechanism in an arbitration clause is to avoid the time and expense of Federal Court motion practice. The case at bar is before this Court because petitioner voluntarily suspended the *ex parte* arbitration in order to seek an order from this Court which, in essence, would represent a retroactive approval of petitioner's actions thus far, as well as sanction future acts by the arbitrators. Such a declaratory judgment is not provided for in Title 9 of the United States Code. *A/S Ganger Rolf v. Zeeland Transportation Ltd.*, 191 F.Supp. 359, 362–63 (S.D.N.Y.1961).

■ It is true that the issue of whether or not Waterspring was in fact a party to this charter and bound by the arbitration clause is not one for the arbitrators and must be passed upon by the court at some time. *See, e.g., Kulukundis Shipping Co. S/A v. Amtorg Trading Corp.*, 126 F.2d 978 (2d Cir.1942); *A/S Ganger Rolf, supra.* But it does not necessarily follow that this issue must be determined prior to the conclusion of the arbitration proceeding. An *ex parte* arbitration under the terms of an arbitration clause like the one in the case at bar is valid and an award made thereunder is enforceable against a party bound by the clause. *See, e.g., Corallo v. Merrick Central Carburetor*, 733 F.2d 248 (2d Cir.1984); *Standard Magnesium Corp. v. Fuchs*, 251 F.2d 455 (10th Cir.1957); *A/S Ganger Rolf, supra.*

Such an *ex parte* arbitration involves risks both to the moving party and to the party which did not appoint its own arbitrator. If the assertion of the petitioner that the panel is properly constituted and that they are parties to the agreement is unfounded petitioner may find that the arbitration was in fact a useless gesture and it

was put to unnecessary expense. But it is hardly in a position to complain if its unfounded assertion leads to that result.

On the other hand, if petitioner's assertions turn out to be well-founded and the panel is properly constituted, TMHI is in the position, by its own default, of being precluded from contesting the merits. It may not complain that it has not been heard on the merits before the arbitrators since it waived the right to do so, granted to it by the arbitration agreement by which it bound itself.

The Court notes that the object of the Arbitration Act contemplates only the enforcement of the arbitration agreement made by the parties themselves in the manner they themselves provide. "Having designed their own remedy for recalcitrance [petitioner] cannot, over respondent's objection, ignore that remedy and pursue another." *A/S Ganger, supra,* 191 F.Supp. at 362.

"What petitioner[ ] really want[s] here is a judgment declaring [the parties bound by the arbitration clause] in advance of arbitration as insurance against the possibility that [it] may be mistaken in [its] assertion that it is so bound. It does not seem to me that Sections 4, 5 and 6 of the Act contemplate such a declaratory judgment or authorize the Court to render it. These sections are designed only to insure that the parties proceed in the manner provided by the arbitration agreement which they themselves fashioned." *Id.* at 362–63.

Since the contract permitted petitioner to proceed with the arbitration without respondent's cooperation, petitioner is not a "party aggrieved" and 9 U.S.C. § 4 does not apply. *A/S Ganger Rolf, supra,* 191 F.Supp. 362–363; *Cf. Aaacon Auto Transport, Inc. v. Barnes,* 603 F.Supp. 1347, 1349 (S.D.N.Y.1985) (party cannot compel arbitration where other side had demanded arbitration in another forum); *Koreska v. Perry Sherwood Corp.,* 253 F.Supp. 830, 832 (S.D.N.Y.1965) (court cannot compel arbitration anywhere when parties have already submitted to arbitration in accordance with terms of contract), *aff'd,* 360 F.2d 212 (2d Cir.1966) (mem.).

Accordingly, petitioner's motion to compel the continuation of the arbitration before the present panel is denied. However, as respondent has cross-moved to vacate the final partial arbitration award, many of the issues raised by petitioner are properly before this Court.

## MOTION TO VACATE THE PARTIAL FINAL AWARD

TMHI has moved to vacate the partial final award dated December 5, 1988. TMHI contends that the panel was improperly constituted; that the panel failed to grant a reasonable adjournment of the first hearing in violation of Section 10(c); and, that TMHI had no contractual undertaking with Waterspring.

### A. *Constitution of Panel*

Under Clause 24, the claimant must name his arbitrator, and must serve written notice specifying the name and address of said arbitrator *upon an officer* of the respondent. The clause provides that such service, in writing, upon an officer shall be "wherever he may be found." Oxton Affidavit, Exhibit 1. After proper service upon an officer of the respondent, the claimant may name an arbitrator on behalf of the respondent upon the passage of twenty days.

In the present case, Owner served Charterer with its written demand for arbitration and appointment of an arbitrator by facsimile and mail, on October 12, 1988. Ziccardi Affidavit, Exhibit 4. On October 25, 1988, Charterer requested an extension of time to appoint an arbitrator. Ziccardi Affidavit, Exhibit 5.

The parties agree that service of the demand under Clause 24 is not effective until actual notice is received by an officer of the respondent. *See, e.g., M.V. AKTI,* 1976 A.M.C. 424 (S.D.N.Y.1976). Moreover, respondent does not deny that it received the facsimile on the day it was received.[1] Instead, Charterer has insisted

---

1. The Court notes that respondent has never asserted that an officer of TMHI did not receive actual notice on October 12, 1988. Rather, TMHI contends that even if the service of the

that the demand is void because it was not addressed to an officer of TMHI. Thus, the issue of the date upon which an officer of TMHI received actual notice of the demand for arbitration has not been directly put in issue. Rather, respondent appears to claim that even if an officer received the facsimile on October 12, 1988, that demand was insufficient because it was not addressed to a particular corporate officer.

■ It is axiomatic that an award will not be enforced if the arbitrators are not chosen in accordance with the method agreed to by the parties. *Avis Rent a Car System v. Garage Employees Union,* 791 F.2d 22, 25 (2d Cir.1986). Accordingly, the Court will first determine whether the panel was properly constituted. As further discovery is required to permit this determination of this issue, the Court will reserve judgment on respondent's motion.[2]

■ An agreement to arbitrate in New York constitutes a consent to submit to the personal jurisdiction of the courts of New York, and such consent "includes consent to service by any method consistent with due process." *Hamilton Life Insurance Company v. Republic National Life Insurance Company,* 408 F.2d 606, 613 (2d Cir.1969); *Petrol Shipping Corporation v. Kingdom of Greece,* 360 F.2d 103 (2d Cir. 1966); *Flexi–Van Leasing Car v. Gulf Fleeting Marine Corp.,* 108 F.R.D. 116 (S.D.N.Y.1985); *AAACON Auto Trans-*

*port, Inc. v. Klee,* 356 F.Supp. 319 (S.D.N. Y.1973); *Lawn v. Franklin,* 328 F.Supp. 791 (S.D.N.Y.1971). Due process requires that service be "reasonably calculated to apprise [respondent] of the suit." *International Shoe Co. v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945).

As the parties agreed to arbitrate in New York, the sole function of service is to give notice to respondent that proceedings have been commenced against it. *Atlanta Shipping Corp. v. Cheswick–Flanders & Co.,* 463 F.Supp. 614 (S.D.N.Y.1978); *see also Merrill Lynch, Pierce, Fenner & Smith v. Lecopulos,* 553 F.2d 842, 845 (2d Cir.1977). For example, registered mail has been held a sufficient means of giving this notice. *Atlanta Shipping Corp., supra,* 463 F.Supp. at 618; *see also Merrill Lynch, Pierce, Fenner & Smith, supra,* 553 F.2d at 845 (only notice received was service of motion papers on defendant's attorneys). Moreover, no unfairness results when actual notice has been given. *Merrill Lynch, Pierce, Fenner & Smith, supra,* 553 F.2d at 845. *Downing v. Merrill Lynch, Pierce, Fenner & Smith,* 725 F.2d 192 (2d Cir. 1984).

■ In the present case, service of the demand for arbitration was made by facsimile and mail and was reasonably calculated to apprise Charterer of the demand.

---

demand of arbitration was effective when received by an officer "petitioner in this instance still would have the burden of establishing that date upon which such notice was ultimately received by an officer of the respondent." Respondent's Memorandum in Support of Counter–Motion to Vacate Partial Final Award at 7 n. *. If, in contesting the constitution of the panel, respondent is claiming that an officer did not receive notice more than 20 days before the second arbitrator was appointed, it is reminded by the Court that such a contention must be well grounded in fact.

Counsel is reminded that Fed.R.Civ.P. 11 "explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed." *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 252 (2d Cir.1985); *International Shipping, S.A. v. Hydra Offshore, Inc.,* 875 F.2d 388 (2d Cir.1989). Rule 11 sanctions should be applied where "after reasonable inquiry, a competent attorney could

not form a reasonable belief that the pleading *is well grounded in fact* and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Id.* 762 F.2d at 254 (emphasis added). Although the actions of the parties do not warrant sanctions at this time, both the parties and their attorneys are hereby put on notice that the Court will not tolerate contumacious attitudes on their parts, nor vexatiousness in unduly prolonging these proceedings.

2. The Court will not address respondent's additional contention that the award should be vacated due to the arbitrators' refusal to grant an extension at this time, as a resolution of this issue would not be dispositive. For instance, if the Court determines that the panel was properly constituted but vacates the award on other grounds, it has the discretion under 9 U.S.C. § 10(e) to direct a rehearing by the arbitrators.

Facsimile is a widely accepted means of communication in business in the United States. It is reliable and immediate. Accordingly, the method of service employed by petitioner is sufficient. Moreover, as service of the demand under Clause 24 is not effective until actual notice is received by an officer of respondent, the absence of a specific reference to a named officer is harmless.

Nevertheless, in order to determine whether the arbitration panel is properly constituted, the date upon which an officer of respondent had actual notice of the demand must be established. Both parties argue that the burden of proof on this matter rests with the opposing side; yet, neither side had presented any authority to support their position.

The Court notes that the burden of demonstrating that service was properly made is ordinarily on the petitioner. *See, e.g., Lehigh Valley Industries, Inc. v. Birenbaum*, 527 F.2d 87 (2d Cir.1975); *Chemical Bank v. Davis*, 133 A.D.2d 756, 520 N.Y. S.2d 44 (2d Dept.1987); *Lexington Insurance Co. v. Schuyler Bumpers, Inc.*, 125 A.D.2d 554, 509 N.Y.S.2d 629 (2d Dept. 1986); *Pinto v. House*, 79 A.D.2d 361, 436 N.Y.S.2d 733 (1st Dept.1981); 4A Wright & Miller, *Federal Practice & Procedure* § 1083 (2d ed. 1987) (party on whose behalf service is made has the burden of establishing its validity). In the present case, the Court has determined that service was properly effected, and the remaining dispute is when the twenty day period began to run. This is the date on which an officer of respondent received actual notice of the demand for arbitration. The Court determines that the burden of establishing when service was actually effected is on petitioner. Petitioner has requested an opportunity to conduct discovery on this issue, as the pertinent facts are particularly within respondent's knowledge. Petitioner's request is hereby granted. Petitioner is granted sixty (60) days from the effective date of this opinion to conduct discovery on the issue of when, and if, the service of process became effective. The parties shall simultaneously submit briefs on this issue ten (10) days after the conclusion of discovery. The Court will reserve judgment on the propriety of the arbitration panel until the submission of these papers.

## B. *Proper Parties*

Respondent's remaining contention is that the arbitration award is improper since Waterspring was not a party to the arbitration agreement. The freight and demurrage invoices which underlie petitioner's substantive claim were made in the name of Adriatic Tankers Shipping Company, S.A. *See* Oxton Affidavit, Exhibits 2 & 3. The Charter of July 6, 1988, originally contemplated performance by the vessel M/V COUNTESS, owned by Astor Marine and operated by Adriatic. The COUNTESS became delayed and the Charter was amended to change the vessel to OCEANIA GLORY. However, the parties dispute whether there was an agreement to amend the Charter to substitute Waterspring for Astor Marine as owner.

Petitioner contends that Astor Marine is the agent of Waterspring. Alternatively, petitioner asserts that the arbitrators were appointed with reference to the charter party on behalf of a "generic" owner. Additionally, petitioner alleges that Astor Marine will ratify the acts of the arbitrators which have occurred.

Arbitration is, of course, a contracted-for right. Petitioner has offered no evidence that Astor Marine is an agent for Waterspring. Rather, petitioner asks this Court to create a "legal fiction" that Astor Marine was the agent of Waterspring. Petitioner's Memorandum in Opposition to Motion to Vacate at 4. An agency relationship either exists or it does not.

Similarly, agents and attorneys cannot act on behalf of "generic owners." In the fixture telex confirming the July 6, 1988 charterparty, the owners are clearly stated to be "Astor Marine S.A. of Panama." Oxton Affidavit, Exhibit 1. The "owner" in this charterparty form is not an all purpose concept subject to an after the fact shell game. An undisclosed principal remains the same entity and does not change identity after the fact to suit com-

mercial convenience. To permit a "legal fiction" that sanctions the shuffling of identities among "generic owners" is to countenance corporate thimblerigs and to permit voluntary piercing of corporate veils. Accordingly, petitioner's agency arguments must fail.

However, the parties have submitted conflicting affidavits concerning the existence of an oral agreement to substitute Waterspring for Astor Marine. Petitioner contends that Jesper Claussen ("Claussen") and Mike Hasselbalch ("Hasselbalch") agreed orally to a substitution of owners but that this agreement was mistakenly omitted from the confirming telex. Affidavit of Jesper Claussen, sworn to on January 20, 1989 ("Claussen Affidavit"), ¶ 6. Respondent contends that no such agreement was entered into. Affidavit of Michael Hasselbalch, sworn to on March 3, 1989 ("Hasselbalch Affidavit"). Therefore, if the Court subsequently determines that the arbitration panel was properly constituted, and that the request for an adjournment was unreasonably denied, it will hold a hearing on the question of an oral amendment to the Charter altering the identity of the vessel owner, under 9 U.S.C. § 4. *See Interbras Cayman Co. v. Orient Victory Shipping, Etc.*, 663 F.2d 4 (2d Cir.1981).

## CONCLUSION

Petitioner's motion to compel arbitration is denied. The Court reserves judgment on respondent's motion to vacate the partial final arbitration award. Petitioner is granted sixty (60) days from the effective date of this opinion to conduct discovery on the issue of when, and if, the service of process became effective. The parties shall simultaneously submit briefs on this issue ten (10) days after the conclusion of discovery.

SO ORDERED