In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1304

Employers Insurance of Wausau,

Plaintiff-Appellee,

v.

Banco De Seguros Del Estado,

Defendant-Appellant.


Appeal from the United States District Court
for the Western District of Wisconsin.
No. 98 C 521--Barbara B. Crabb, Judge.


Argued September 13, 1999--Decided December 15, 1999


Before Posner, Chief Judge, and Cudahy and Kanne,
Circuit Judges.

Kanne, Circuit Judge.  Banco De Seguros Del
Estado ("Banco") was a member of a Lloyd's,
London syndicate that reinsured several insurance
policies underwritten by Employers Insurance of
Wausau ("Wausau"), a Wisconsin insurance company.
In September 1995, an arbitration panel awarded
Wausau $7,783,324 from the syndicate, of which
Banco was liable for $181,319. When Wausau filed
a petition in the district court to confirm the
arbitration award against Banco, Banco moved to
vacate, claiming that Wausau's service of notice
of arbitration did not comply with the terms of
their reinsurance contract or with the Foreign
Sovereign Immunities Act ("FSIA"), 28 U.S.C.
sec.sec. 1330, 1602-1611. The district court
granted Wausau's motion to confirm and denied
Banco's motion to vacate. Banco appeals, claiming
that the district court made errors of law and
fact in determining that notice of arbitration
had been served properly on Banco. Finding no
error, we affirm.

I.  History
     Banco is the state insurance bank and an
instrumentality of the Sovereign Republic of
Uruguay. Wausau is a mutual insurance company
organized under Wisconsin law with its principal
place of business in Wausau, Wisconsin. Between
1966 and 1973, Wausau entered into a series of

contracts known as excess retrocessional insurance treaties ("Treaties") with more than 100 underwriters at Lloyd's, London and other London market insurance companies, including Banco, commonly referred to as the "retrocessionaires." Under the Treaties, the retrocessionaires agreed to reinsure Wausau for specified percentages of direct reinsurance losses paid by Wausau, as long as those losses were within the coverage of the Treaties.

The Treaties were identical to one another, except for the specific percentages of coverage allocated to a particular party under each one. Each Treaty contained an arbitration clause, which stated that any arbitration requested by the parties would take place in Wausau, Wisconsin. The arbitration clause did not specify what procedures would be used in the event of an arbitration. Each Treaty also contained a "Service of Suit" clause, which provided that:

It is agreed that in the event of a failure of the [retrocessionaires] hereon to pay any amount claimed to be due hereunder, [retrocessionaire], at the request of the reinsured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction . . .

It is further agreed that service of process in such suit may be made upon Messrs. Mendes & Mount . . . and that in any suit instituted against [retrocessionaires], [retrocessionaires] will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

[Mendes & Mount] are authorized and directed to accept service of process on behalf of [retrocessionaires] in any such suit and/or upon the request of the reinsured to give a written undertaking to the reinsured that they will enter a general appearance upon [retrocessionaire's] behalf in the event such suit will be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, [retrocessionaires] hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the reinsured . . . and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

The New York law firm of Mendes & Mount was designated as the party to accept service for Banco. Each Treaty also contained an "intermediary clause," which designated Pritchard & Baird, Inc., ("Pritchard") as the "intermediary . . . through whom all communications and transactions relating thereto shall be transmitted by the parties."

Pursuant to the intermediary clause, Wausau and the retrocessionaires originally communicated through Pritchard. However, Pritchard became insolvent in 1975, and the parties to the Treaties thereafter used Leslie & Godwin, a British firm, as an intermediary. The parties never amended their Treaty to reflect this change. Leslie & Godwin contacted Banco through another intermediary, Argenhall, S.A., an Argentine brokerage firm.

In 1984, Wausau began to submit proofs of loss to Leslie & Godwin and to Lord, Bissell & Brook, counsel to the lead underwriter among the retrocessionaires, Merrett Syndicate. These proofs of loss showed that policy-holders on policies reinsured by Wausau suffered extensive injuries related to asbestos contamination. Merrett Syndicate engaged Lord, Bissell & Brook to audit these claims and determine whether they fell within the scope of the Treaties. Despite continued submissions of proofs of loss, the retrocessionaires refused to reimburse Wausau for its losses.

By 1991, Wausau determined that the retrocessionaires had not complied with the terms of the Treaties. On May 27, 1991, Wausau sent a demand for arbitration to Lord, Bissell & Brook, as agent for Merrett Syndicate, according to the custom of Lloyd's, London that the lead underwriter traditionally handles claims on behalf of all underwriters in a syndicate. Lord, Bissell & Brook then forwarded Wausau's arbitration demand to Leslie & Godwin, who attempted to notify the other retrocessionaires. In June 1991, Leslie & Godwin sent Argenhall a letter informing Banco of Wausau's arbitration demand and asking for confirmation that Lord, Bissell & Brook would represent them. Banco claims that it never received this communication. In the letter, Leslie & Godwin requested that Banco respond, but Banco did not.

On August 19, 1991, Wausau petitioned the Marathon County Circuit Court in Wisconsin for an order compelling the retrocessionaires to proceed with arbitration. The Wisconsin Commissioner of Insurance was served with two copies of the petition, and Mendes & Mount was served with one copy. In addition, Wausau provided Leslie &

Godwin and Lord, Bissell & Brook each with a copy of the petition. The caption of the petition identified the respondents to the petition as including "certain London Market Insurance Companies, including those identified in Appendix A." Appendix A to the petition lists among the respondents the following two parties: "Banco" and "Banco di Seguros del Estado." Banco claims that Mendes & Mount did not notify it of the petition.

The trial court granted Wausau's motion in October 1991, and the Wisconsin Court of Appeals affirmed the circuit court's decision in Employers Ins. of Wausau v. Jackson, 505 N.W.2d 147 (Wis. Ct. App. 1993). In February 1995, the Wisconsin Supreme Court also affirmed. See Employers Ins. of Wausau v. Jackson, 527 N.W.2d 681 (Wis. 1995). The arbitration proceedings commenced in the summer of 1995. In August 1995, Leslie & Godwin again contacted Argenhall and attempted to inform Banco that it was a party in the arbitration proceeding and to ask Banco if it wished Lord, Bissell & Brook to represent it in the proceedings. Banco did not respond to this message and did not participate in the proceedings.

On September 18, 1995, the arbitration panel issued an award in favor of Wausau in the amount of $7,783,324 as a full and final settlement of all its loss claims. The retrocessionaires were each liable for a portion of the award, which varied according to each retrocessionaire's proportionate share of the coverage allocation. The retrocessionaires were given forty-five days to pay their respective shares. If they did not pay, each would be subject to stiff penalties, including 7.5 percent interest and joint and several liability for attorneys' fees and costs, and would be required to provide a $9,000,000 letter of credit to Wausau to secure payment of the retrocessionaires' ultimate liability. Banco's share of the total award was $181,319, but Banco was not listed on the arbitration award. Banco claims that it was never informed of the arbitration proceedings, and it has not paid either its share of the award or its additional penalties, which now exceed $9,000,000.

In July 1998, Wausau filed a petition to confirm the arbitration award as to Banco in the United States District Court for the Western District of Wisconsin. Wausau served this petition on both the Wisconsin Commissioner of Insurance and on Mendes & Mount. Banco's name was listed in the caption, and Mendes & Mount caused process to be served on Banco at its principal place of business in Montevideo, Uruguay. Banco responded to the motion with a motion to vacate

the arbitration panel's award. It claimed that it had never received notice of the arbitration and was not properly served in accordance with Wisconsin law or the requirements of the FSIA. On January 5, 1999, the district court denied Banco's motion to vacate and granted Wausau's motion to confirm. The court found that service on Mendes & Mount and the Wisconsin Commissioner of Insurance of the petition to compel arbitration was sufficient to meet the requirements of the Treaties, Wisconsin law and the constitutional right to due process.

II.  Analysis

On appeal, Banco argues that the district court erred by determining that Wausau's service of process was effective as to Banco, and it argues that the court made clearly erroneous findings of fact in granting Wausau's motion to confirm its arbitration award. In reviewing the grant of a motion to confirm an arbitration award, we decide questions of law de novo and review findings of fact for clear error. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 947-48 (1995); Geneva Secs., Inc. v. Johnson, 138 F.3d 688, 691 (7th Cir. 1998).

As an instrumentality of the sovereign state of Uruguay, Banco is a "foreign state" within the meaning of sec.sec. 1603 (a)-(b) of the FSIA. See sec. 1603(a) ("A 'foreign state' . . . includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b)."); sec. 1603(b)(1)-(3) (defining "instrumentality" as "a separate legal person, corporate or otherwise . . . which is an organ of a foreign state . . . or a majority of whose shares or other ownership interest is owned by a foreign state . . . which is neither a citizen of a State of the United States . . . nor created under the laws of any third country"). Foreign states possess immunity from the jurisdiction of courts of the United States, except as specified by the FSIA. See sec.sec. 1604-1607. By agreeing to a Treaty which designated Wausau, Wisconsin, as the site of any arbitration, however, Banco has waived its immunity in any proceeding to confirm the arbitral award. See sec. 1605(a)(6)(A). Federal courts have original subject matter jurisdiction over all suits involving foreign states, see sec. 1330(a), and Banco admits that Wausau's motion to confirm satisfied the FSIA service requirements, so there is also personal jurisdiction over Banco in this matter. See sec.sec. 1330(b), 1608(b)(1).

Because the United States and Uruguay are both signatories, the Inter-American Convention on International Commercial Arbitration ("Inter-

American Convention") Article V(1)(b), Jan. 30, 1975, reprinted at 9 U.S.C. sec. 301, governs the procedure of confirming an arbitral award as well as the procedure of refusal for an award./1 Section 302 of the Inter-American Convention incorporates certain sections of the New York Convention, codified at 9 U.S.C. sec.sec. 201-208, into arbitration proceedings where both parties are citizens of signatory states. See 9 U.S.C. sec. 302 (incorporating 9 U.S.C. sec.sec. 202-205, 207); see also Jain v. de Mere, 51 F.3d 686, 689 (7th Cir. 1995) ("[A]ny commercial arbitral agreement, unless it is between two United States citizens, involves property located in the United States, and has no reasonable relationship with one or more foreign states, falls under the [New York] Convention.").

Under the New York Convention, within three years of any arbitral award any party to the arbitration may apply to any court with jurisdiction for an order confirming the award against any other party to the arbitration. See 9 U.S.C. sec. 207; Generica Ltd. v. Pharmaceutical Basics, Inc., 125 F.3d 1123, 1129 (7th Cir. 1997). That court shall confirm the award "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in [the Inter-American] Convention." 9 U.S.C. sec. 207 (as applied in 9 U.S.C. sec. 302 to the Inter-American Convention). Article V of the Inter-American Convention specifies seven grounds for refusal of recognition, among them that a party "was not duly notified of the appointment of the arbitrator or of the arbitration procedure to be followed or was unable, for any other reason, to present his case . . . ." Inter-American Convention, Article V(1)(b).

Although arbitration "is simply a matter of contract between the parties," First Options, 514 U.S. at 943, and the parties to a contract can choose to modify the technical requirements for notice of arbitration in the same way that they can modify any other arbitration procedure, there is no evidence in the Treaties between Banco and Wausau of any special notification procedure to be followed in the event of an arbitration. Absent any agreement to the contrary, Article V(1)(b) grants a party the due process rights of the forum state, in this case those of Wisconsin and the United States. See Parsons & Whittemore Overseas Co. v. Societe Generale De L'Industrie Du Papier, 508 F.2d 969, 975-76 (2d Cir. 1974) (interpreting analogous Article V(1)(b) of New York Convention). See also Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc., 23 F.3d 41, 45 (2d Cir. 1994) (stating that Inter-American Convention is "intended . . . to reach

the same results as those reached under the New York Convention"). The right to adequate notice is one part of a fundamentally fair hearing. See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."). However, like all other due process rights, the right to notice may be waived prior to attachment. See D.H. Overmyer Co. v. Frick Co., 405 U.S. 174, 185 (1972). Accordingly, if Banco did not waive its right to notice and was not provided with notice reasonably calculated under the circumstances of arbitration, we may refuse to enforce the award pursuant to Article V(1)(b).

A.  Waiver

The Treaties between Banco and Wausau contain a "Service of Suit" clause which designates that, in any suit filed to recover any amount of money due under the Treaties, Mendes & Mount and the Wisconsin Commissioner of Insurance may be served as Banco's agents for service of process. Wausau argues that by designating special agents for the service of process Banco has waived its right to notice reasonably calculated to apprise it of the pending arbitration.

For an American court to assert personal jurisdiction over a foreign defendant, the court must generally determine that the company has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." Hanson v. Denckla, 357 U.S. 235, 253 (1958); see also Koster v. Automark Indus., 640 F.2d 77, 78 (7th Cir. 1981). However, by agreeing to designate an agent for service of process, as Banco has, foreign companies can waive this requirement of "minimum contacts." See RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1280 (7th Cir. 1997) (holding that, because personal jurisdiction is waivable, parties can contract around minimum contacts requirement). Personal jurisdiction in a given dispute is conditioned on both a court's ability to assert jurisdiction over a defendant and a defendant's receipt of notice and opportunity to be heard. See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 811-12 (1985) (distinguishing right to notice from right to personal jurisdiction); Fuentes v. Shevin, 407 U.S. 67 (1972). By designating a local agent to serve process, Banco knowingly waived its right to dispute personal jurisdiction. There is no evidence that Banco knowingly waived its right to "notice reasonably calculated." Without

knowledge, we are loath to determine that a party
has waived its due process rights. See, e.g.,
Sethness-Greenleaf, Inc. v. Green River Corp., 65
F.3d 64, 67 (7th Cir. 1995) ("[W]aiver in
contract law is the intentional relinquishment of
a known right"). We find that Banco's designation
of an agent for service of process did not
constitute a waiver of its right to notice
reasonably calculated to allow it to be heard.

B.  Notice Reasonably Calculated

Banco admits that a copy of the motion to
compel arbitration was served by a proper person
on its designated agents. It argues that the
motion itself was insufficient to provide notice
to either Banco or its agents that Banco was a
party to the arbitration. Banco relies on three
contentions to assert that Wausau's motion is
insufficient to provide notice reasonably
calculated to Banco or its agents: (1) Wausau did
not follow proper Wisconsin procedures in its
service of process on Banco's agents; (2) Wausau
failed to follow the special service of process
procedure required by the FSIA for foreign
sovereigns; (3) even if Wausau followed the
proper Wisconsin procedures, these procedures do
not provide "notice reasonably calculated" as
required by the United States Constitution and
the Wisconsin Constitution.

Banco contends that Wausau failed to meet
Wisconsin's notice requirement because it failed
to list Banco in the caption of its motion to
compel arbitration and it failed to serve a
formal summons with its motion on Banco's agents.
Banco argues that the parties did not specify by
contract the rules under which arbitration would
be conducted. Therefore, because Article V(1)(b)
requires that, absent a waiver, arbitration
proceedings must meet the due process rights of
the forum state, see Iran Aircraft Indus. v. Avco
Corp., 980 F.2d 141, 145-46 (2d Cir. 1992),
Wausau needed to meet both the notice
requirements and the statutory service
requirements of the forum state.

We disagree with Banco's contention that Article
V(1)(b) of the Inter-American Convention requires
that service of process be made in accordance
with the forum state's service of process
statute. Service of process according to statute
raises a presumption that due process has been
met. See Mid-America Tablewares, Inc. v. Mogi
Trading Co., 100 F.3d 1353, 1358-59 (7th Cir.
1996) (Wisconsin Constitution grants personal
jurisdiction whenever state long-arm statute has
been met, as long as statute meets due process
requirements of federal Constitution); Federated
Rural Elec. Ins. Corp. v. Inland Power & Light

Co., 18 F.3d 389, 391 (7th Cir. 1994). However, Article V(1)(b) only provides Banco with the protection of due process, and due process does not require Wausau to meet state statutory requirements for service of process. See Osteen v. Henley, 13 F.3d 221, 225 (7th Cir. 1993) ("[A] violation of state law . . . is not a denial of due process, even if the state law confers a procedural right."). It only requires that Wausau provide Banco with "notice reasonably calculated" under the federal due process standard. See generally Waterspring, S.A. v. Trans Marketing Houston Inc., 717 F.Supp 181, 186 (S.D.N.Y. 1989) ("An agreement to arbitrate in New York constitutes a consent to submit to the personal jurisdiction of the courts of New York, and such consent 'includes consent to service by any method consistent with due process.'"); Lawn v. Franklin, 328 F.Supp. 791, 794 (S.D.N.Y. 1971) ("Where there is advance consent to the jurisdiction by contract the service of process may be made by any method consistent with due process."). Thus two of Banco's arguments may be merged into one; that by failing to name it in the caption of its motion and providing Mendes & Mount with only one copy of the motion, Wausau failed to provide Banco with "notice reasonably calculated." Both the United States and Wisconsin adhere to the standard of "notice reasonably calculated" enunciated in Mullane. See Greene v. Lindsey, 456 U.S. 444, 449-50 (1982); Dillon v. Dillon, 176 N.W.2d 362, 365-66 (Wis. 1970) (adopting Mullane notice standard, along with compliance with state long-arm statute, as the due process requirement for Wisconsin Constitution).

Under Wisconsin law, a principal is "bound and affected by such knowledge and notice as its agents received." Lakeshore Commercial Fin. Corp. v. Bradford Arms Corp., 173 N.W.2d 165, 172 (Wis. 1970). See generally Smith v. Metropolitan Life Ins., 94 F.2d 277, 280 (7th Cir. 1938) (finding notice to a designated agent binding on party). Here, Banco's designation of registered agents for service of process created an agency relationship from which actual notice, rather than constructive notice, must be inferred. See Peterson v. Sealed Air Corp., 902 F.2d 1232, 1237 (7th Cir. 1990). Service upon a duly appointed agent comports with the due process clause. See Nat'l Equipment Rental, Ltd. v. Szukhent, 375 U.S. 311, 317-18 (1964); Kaplan v. United States, 133 F.3d 469, 475 (7th Cir. 1998). In Kaplan, we found that providing notice to a designated "notice partner" in a limited partnership satisfied the due process notice requirement for other limited partners who were not personally given notice. Appellants argued that certain provisions of the Tax Equity and Fiscal

Responsibility Act of 1982 ("TEFRA"), 26 U.S.C. sec.sec. 6621-34, were unconstitutional because it denied due process to certain partners with a de minimis stake in the partnership personal notice of an adjustment to a limited partnership's taxes. In finding that notice to some partners imputed notice upon all members of the partnership, we noted the "common-law principle of partnership law that notice to one general partner constitutes notice to all partners." Kaplan, 133 F.3d at 475. That common-law principle depends on the characterization of a partnership as a web of interlocking agency relationships, in which each principal is imputed actual knowledge from the knowledge of any of his agents. We find the principle set forth in Kaplan applicable to the facts before us. Thus, if either Mendes & Mount or the Wisconsin Commissioner of Insurance received actual notice that Banco was subject to the Wausau arbitration, then Banco received notice sufficient to meet the requirements of due process.

Banco rests its contention that Wausau did not serve its agents with adequate notice that Banco was a party on two facts: (1) the motion to compel arbitration fails to list Banco correctly in either the official caption or Appendix A; (2) each agent was provided with only one copy of process, despite the large number of retrocessionaires. Banco argues that Wausau instead should have sent a copy of process to Banco's (and every other retrocessionaire's) principal place of business. However, "notice reasonably calculated" requires only that the notice provided "be of such nature as reasonably to convey the required information." Mullane, 339 U.S. at 314. In the circumstances before us, Wausau was merely required to inform Banco, or one of its registered agents, of its motion to compel arbitration against the syndicate, or of its wish to conduct arbitration.

No reasonable person could be expected to serve more than 100 copies (that is, one copy for each retrocessionaire) of the same motion on Mendes & Mount and the Commissioner of Insurance. As the district court noted, the purpose of the Service of Suit clause is, in part, to anticipate the burden of personally serving the numerous members of each Lloyd's syndicate individually and avoid it by designating a uniform agent for all. Moreover, know-ing that the same person would be agent to each of the retrocessionaires, no reasonable person would expect each retrocessionaire to be listed in the caption. If the agent must index the Appendix to find the names of some retrocessionaires, it would not be unreasonable to expect the agent to do so for all of them. Had Wausau not erroneously listed Banco

in the Appendix as either "Banco" or "Banco di Seguros del Estado," there would be no reason to question that it provided Banco's agents with "notice reasonably calculated" to apprise them of Banco's involvement in the pending arbitration.

Wausau misspelled Banco's name in the Appendix, so we must consider whether this error is one of sufficient magnitude to compromise Wausau's attempt to provide Banco with notice. We will not allow a technical error such as a spelling mistake to implicate Banco's right to due process, because both Mendes & Mount and the Wisconsin Commissioner of Insurance had the duty as agents of Banco to make a reasonable inquiry into who "Banco di Seguros del Estado" might be. See, e.g., Dombeck v. Chicago, Milwaukee, St. Paul & Pac. R.R. Co., 129 N.W.2d 185, 194 (Wis. 1964) ("The general rule is that a principal may recover from his agent for loss or damage caused the principal by the negligent act of the agent."). The burden of deciphering the technical error in its principal's name in this case should rest on Banco's agents: the Wisconsin Commissioner of Insurance and Mendes & Mount. Thus, we agree with the district court that Wausau's service of its motion on both Mendes & Mount and the Wisconsin Commissioner of Insurance provided Banco with "notice reasonably calculated" of the pending arbitration.

In the alternative, Banco argues that, as the instrumentality of a foreign sovereign, it has general immunity from suit in the United States, subject only to the exceptions of the FSIA. Pursuant to the FSIA, certain formalities must be followed in the proper service of a complaint. Section 1608 of the FSIA requires that service be made "(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality . . . ," or "(2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents." Id. at sec. 1608(b)(1)-(2).

Banco contends that the only clause in the treaty that could constitute a "special arrangement" for the purposes of the act was the intermediary clause, but neither it nor the procedures of any applicable international convention were followed. In addition, Banco notes that Wausau never served the summons required in both sec. 1608(b)(1) and sec. 1608(b)(2). Therefore, Banco contends that it was never properly served with notice of the pending arbitration.

Banco's attempts to shield itself beneath the procedural requirements of the FSIA merely obfuscate the real issue of notice. Banco seems to believe that any improprieties in Wausau's service of the motion to compel arbitration relieve Banco of notice of the arbitration. Instead, such an impropriety would render Banco immune to the action compelling parties to arbitrate. Wausau admittedly did not serve Banco with a summons, so might not have been able to compel Banco into arbitration.

Other retrocessionaires were compelled to enter arbitration with Wausau, and arbitration occurred. By agreeing to the arbitration provision in its Treaty, Banco agreed to submit itself to the decision made by any arbitrators empaneled pursuant to the arbitration clause. Banco is bound to the arbitral award not by the motion to compel arbitration, but by the language of the Treaty that it made with Wausau.

Banco, of course, could have retained immunity from any proceedings to confirm the award had Wausau not served notice of the motion to confirm an arbitration award. However, Wausau properly served notice of the motion to confirm, and we must confirm the award regardless whether Banco could have been forced to participate in the arbitration. See 9 U.S.C. sec. 207 ("The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [Inter-American] Convention." (emphasis added)). We have already determined that Banco had notice as required by Article V(1)(b) of the Inter-American Convention, and any fault in Banco's inability to appear at the arbitration rests with Banco's designated agents, not with Wausau. Absent any grounds for refusal of recognition of the award, we are compelled by the Inter-American Convention to confirm it.

Banco also obfuscates the issue of notice by claiming that the arbitration award was, in effect, a default judgment, so the requirements of sec. 1608(e) of the FSIA must be met. Section 1608 requires that any claimant of a default judgment establish his right to relief "by evidence satisfactory to the court." sec. 1608(e). However, sec. 1608(e), like the rest of the FSIA, refers to judicial proceedings. Wausau never sought a default judgment against Banco; instead it seeks to confirm an arbitral award in the manner provided by the FSIA. Section 1608(e) does not apply.

C. Findings of Fact

Banco also argues that the district court made clearly erroneous findings of fact which led it

incorrectly to grant Wausau's motion to confirm. Banco disputes three "undisputed facts" found by the district court: (1) Wausau notified all retrocessionaires of its filing of suit by service on Mendes & Mount; (2) a custom exists at Lloyd's, London that the petitioner need only inform the lead retrocessionaire of matters relating to the operation of the Treaties; (3) Leslie & Godwin had not communicated directly with Banco, but instead sent information in care of Argenhall. We review findings of fact made in motions to confirm arbitration for clear error, see First Options, 514 U.S. at 947-48, and will reverse the trial court only if we come to a "definite and firm conviction" that it made a mistake. Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).

We are unconvinced that any of the district court's findings of undisputed fact are clearly in error. Banco contends that, because it disputes receiving notice of the arbitration after Wausau served Mendes & Mount, all the retrocessionaires did not receive notice of the pending arbitration. We have found that each retrocessionaire listed in the caption of the motion to compel arbitration must be imputed to have received actual notice by service on Mendes & Mount. Because Banco does not provide us with evidence that any other retrocessionaire was omitted from the motion to compel arbitration, we see no error in the district court's finding.

In holding that Banco received notice of arbitration by Wausau's service of the motion to compel, we do not rely on any of the other findings of fact that Banco urges us to review. As such, these findings do not prejudice Banco, and "[a]n error that is not prejudicial is still an error, but it is unlikely to be a clear error." Chaulk v. Volkswagen of America, Inc., 808 F.2d 639, 644 (7th Cir. 1986) (Posner, J., dissenting). After our review of the facts, we find that Banco presented the district court with no evidence to controvert either of the other undisputed facts that it asserts were found erroneously. Absent any evidence that would tend to contradict such findings, we find no clear error in the other findings of fact made by the district court.

III.  Conclusion

Because we find that Wausau's motion to compel arbitration effectively gave Banco notice of arbitration proceedings and because we find that the district court made no clearly erroneous findings of fact in confirming the arbitration

award in favor of Wausau or in denying Banco's motion to vacate the arbitration award, the decisions of the district court are AFFIRMED.

/1 As the district court noted, since both the United States and Uruguay are also signatories of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"), Dec. 29, 1970, reprinted at 9 U.S.C.A. sec. 201, codified at 9 U.S.C. sec.sec. 201-208, unless a majority of the other retrocessionaires are also signatories of the Inter-American Convention, the New York Convention would actually apply to this dispute. See 9 U.S.C. sec. 305. However, as we discuss below, the provisions of both conventions are interpreted to reach the same result in each case, and, lacking knowledge of the signatory status of the home states of the remaining retrocessionaires, the parties have stipulated that the Inter-American Convention shall apply. Since the outcome would not be affected if we instead applied the New York Convention, we agree with the district court that "the point appears to be technical."