MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, Plaintiff-Appellant,

v.

Costa LECOPULOS, a/k/a Constantinos Lecopulos, Defendant-Appellee.

No. 313, Docket 76–7332.

United States Court of Appeals, Second Circuit.

Argued Feb. 9, 1977.

Decided April 25, 1977.

Southern District of New York dismissed Merrill Lynch's complaint for lack of personal jurisdiction over Lecopulos. We conclude that this was error, and we reverse and remand.

## I

The relevant facts may be briefly stated. In October 1974, employees of Merrill Lynch, Pierce, Fenner & Smith Ltd., a London subsidiary of Merrill Lynch, discussed with Lecopulos in Athens the opening of a commodity account with Merril Lynch through the London office. In early November, Lecopulos went to London and opened the account by signing certain documents, including a Commodity Account Agreement, and by depositing $500,000. It appears that Lecopulos never contacted New York directly, but always dealt through the London representatives. He apparently did realize, however, that future transactions he authorized would occur in New York. Within the next two months, Merrill Lynch traded numerous sugar futures contracts for Lecopulos's account, with the unfortunate result that Lecopulos's entire $500,000 investment was lost and his account showed a debit balance of $105,846.01.

In January 1975, Merrill Lynch sued for the unpaid balance in the Supreme Court of the State of New York, New York County, and obtained an order of attachment. Merrill Lynch served Lecopulos in Greece in March with a summons and copy of the complaint. Without answering the complaint, Lecopulos removed the action to federal court on grounds of diversity of citizenship and jurisdictional amount. Merrill Lynch then moved in the federal court to stay its action pending arbitration, on the basis of an arbitration clause in the Commodity Account Agreement.[1] Motion pa-

E. Michael Bradley, New York City (Brown, Wood, Ivey, Mitchell & Petty, Thomas J. Mullaney, New York City, on the brief), for plaintiff-appellant.

Peter Weiss, New York City (Weiss, Dawid, Fross & Lehrman, Ellen J. Seeherman, New York City, on the brief), for defendant-appellee.

Before FEINBERG, GURFEIN and MESKILL, Circuit Judges.

FEINBERG, Circuit Judge:

In this appeal we consider whether a foreign defendant's commercial involvement with a New York plaintiff obliges the foreign party to defend a claim against him in New York. Plaintiff is Merrill Lynch, Pierce, Fenner & Smith Incorporated (Merrill Lynch), a Delaware corporation, with its principal place of business in New York. Defendant is Costa Lecopulos, a Greek citizen and resident. Judge John M. Cannella of the United States District Court for the

---

1. The Agreement provided, in part:

   It is agreed that any controversy between us arising out of your business or this agreement, shall be submitted to arbitration conducted under the provisions of the Constitution and Rules of the Board of Governors of the New York Stock Exchange, except however if the controversy involves any Security or Commodity transaction or contract relating thereto executed on an exchange located outside of the United States then such controversy, at the election of either of us, shall be submitted to arbitration conducted under the constitution and rules of such exchange (and if neither of us so elects, arbitration shall be conducted under the provisions of

pers were served on Lecopulos's attorneys in New York. Lecopulos moved for dismissal for lack of personal jurisdiction over him, and Judge Cannella granted Lecopulos's motion in a brief memorandum opinion.

## II

On appeal, Merrill Lynch asserts three bases for the district court's jurisdiction over defendant. The ground most strenuously argued is N.Y.Civ.Prac.Law § 302(a)(1) (McKinney 1972), which extends long-arm jurisdiction to reach a defendant in an action "arising from" the defendant's "transact[ion of] any business within" New York. Second, Merrill Lynch asserts jurisdiction under the "doing business" test, now embodied in N.Y.Civ.Prac.Law § 301 (McKinney 1972). This test requires more than transacting business, see *Fontanetta v. American Board of Internal Medicine*, 421 F.2d 355, 357 (2d Cir. 1970), but jurisdiction established under it is not limited to actions arising from the in-state conduct. Third, Merrill Lynch relies on the Commodity Account Agreement arbitration clause as consent by Lecopulos to the jurisdiction of courts in New York. The question whether long-arm jurisdiction exists under New York law in cases such as this one has been troublesome. Lecopulos argues that *Haar v. Armendaris Corp.*, 31 N.Y.2d 1040, 342 N.Y.S.2d 70, 294 N.E.2d 855 (1973), on which the district court relied, held that a New York agent cannot establish jurisdiction over his out-of-state principal solely on the basis of the agent's own acts in New York. See *Merrill Lynch, Pierce, Fenner & Smith Incorporated v. Alexiou*, 397 F.Supp. 1292 (S.D.N.Y.1975). Cf. *Parke-Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 19 n. 2, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970). But that rule has received strong criticism, see McLaughlin, Practice Commentary,

C302:3 N.Y.Civ.Prac.Law § 302 (McKinney Supp.1975) ("regrettable turn in the tortuous road of CPLR 302"). However, we need not consider whether section 302 confers jurisdiction here because we believe that the jurisdictional argument based upon Lecopulos's consent to arbitrate is determinative.[2]

In this era of extensive international commerce, forum selection clauses have come to be recognized as useful devices. *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 8–15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). In addition to choosing the jurisdiction in which disputes are to be litigated, the parties can also designate a specific type of forum, e. g., arbitration, see *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), in appropriate cases. Against this background, Merrill Lynch argues that the agreement to resolve disputes by arbitration in New York constituted consent to personal jurisdiction in New York. Merrill Lynch is correct. In *Victory Transport Inc. v. Comisaría General*, 336 F.2d 354, 363 (2d Cir. 1964), cert. denied, 381 U.S. 934, 85 S.Ct. 1763, 14 L.Ed.2d 698 (1965), we said:

> By agreeing to arbitrate in New York, where the United States Arbitration Act makes such agreements specifically enforceable, the Comisaría General must be deemed to have consented to the jurisdiction of the court that could compel the arbitration proceeding in New York. To hold otherwise would be to render the arbitration clause a nullity.

Accord, *Island Territory of Curacao v. Solitron Devices, Inc.*, 489 F.2d 1313, 1317 (2d Cir. 1973), cert. denied, 416 U.S. 986, 94 S.Ct. 2389, 40 L.Ed.2d 763 (1974); *Reed & Martin Inc. v. Westinghouse Electric Corp.*, 439 F.2d 1268, 1276–77 (2d Cir. 1971). See also *Hamilton Life Insurance Co. of New*

the Constitution and Rules of the Board of Governors of the New York Stock Exchange). Arbitration must be commenced within one year after the cause of action accrued by service upon the other of a written demand for arbitration or a written notice of intention to arbitrate, naming therein the arbitration tribunal.

This agreement and its enforcement shall be governed by the laws of the State of New York.

2. For the same reason, it is also unnecessary to consider the claim based on section 301.

*York v. Republic National Life Ins. Co.*, 408 F.2d 606, 612–13 (2d Cir. 1969).

Lecopulos argues that even if the agreement confers jurisdiction on courts in New York, proper service of a demand for arbitration is required to bring him within the power of the courts or arbitrators. The only notice Lecopulos received here[3] was the motion to stay the court action pending arbitration, which was served on his attorneys. Lecopulos asserts that this notice was inadequate because the court did not have jurisdiction over him. But the court did have jurisdiction, as we have just explained. And, a motion for arbitration is a written demand for arbitration, which Lecopulos acknowledges his attorneys received. Regardless of the precise legal status of Lecopulos's attorneys when they appeared in the district court, no unfairness results from giving effect to the notice they actually received. Merrill Lynch could just as easily have served the demand for arbitration on Lecopulos in Greece. That it chose instead to file suit and move for a stay—evidently to gain the benefit of attachment—is not improper. See *The Anaconda v. American Sugar Co.*, 322 U.S. 42, 44–45, 64 S.Ct. 863, 88 L.Ed. 1117 (1964). See also M. Domke, The Law and Practice of Commercial Arbitration 266 (1968). The district court had adequate basis for exercising its jurisdiction over Lecopulos, and should have done so.

Lecopulos also contends that Merrill Lynch waived its right to arbitrate by filing a lawsuit rather than proceeding directly to arbitration. Thus, Lecopulos argues, he was released from the obligation which formed the basis of jurisdiction. However, under federal law the filing of an action in a district court is not a waiver of the right to arbitrate, at least not before the defendant has answered on the merits, which Lecopulos has not done. *Chatham Shipping Co. v. Fertex Steamship Corp.*, 352

F.2d 291 (2d Cir. 1965); see *Carcich v. Rederi A/B Nordie*, 389 F.2d 692, 695–96 (2d Cir. 1968).[4]

Finally, Lecopulos argues that if we remand we should direct the district court to consider several fact issues before ruling on the arbitration motion. The issues involve possible mistake or deceit in the making of the agreement to arbitrate, unconscionability, and a possible bar to arbitration by the contractual limitations period. The court below has not yet dealt with these issues, and the question whether they should be resolved in the district court or in the arbitration forum should be decided in the first instance by the district court.

For the reasons outlined above, we reverse the order dismissing the complaint and remand the case to the district court for further proceedings.

---

3. Merrill Lynch did serve Lecopulos with a Notice of Intention to Arbitrate, but only after the district court dismissed the complaint.

4. Lecopulos suggests that we should look to the law of New York on this issue. But even in diversity cases, federal arbitration law controls in federal court whenever the action involves subject matter over which Congress has power to legislate. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404–05 and n. 13, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).