**In the Matter of the Arbitration between**

**ATLANTA SHIPPING CORP., as Disponent Owner, Petitioner,**

**and**

**CHESWICK–FLANDERS & CO., as Charterer, Respondent.**

No. 78 Civ. 3517 (CHT).

United States District Court,
S. D. New York.

Dec. 27, 1978.

---

Zock, Petrie, Reid & Curtin, New York City, for petitioner; Philip J. Curtin, New York City, of counsel.

Ely & Bernard, Erie, Pa., Parker, Chapin, Flattau & Klimpl, New York City, for respondent; Bruce W. Bernard, Erie, Pa., Menachem J. Kastner, New York City, of counsel.

## OPINION

TENNEY, District Judge.

On August 1, 1978, Atlanta Shipping Corp. ("Atlanta") commenced this action by filing a petition to compel arbitration between it and Cheswick-Flanders & Co. ("Cheswick"). Atlanta subsequently moved pursuant to section 4 of the Federal Arbitration Act, 9 U.S.C. § 4 (the "Act"), for an order compelling the arbitration. Cheswick opposes the motion, but it also demands, in the alternative, arbitration on claims it

made in its Answer to the Petition. For the reasons given below, Atlanta's motion is granted, and it is further ordered that the claims contained in Cheswick's counterdemand be arbitrated.

### Background

Atlanta alleges that on May 31, 1978, as owner of the ILSE SCHULTE, it entered a written contract of voyage charter party ("charter party") with Cheswick, pursuant to which charter party Atlanta placed the vessel at the disposal of Cheswick at Houston, Texas in June 1977. There the vessel was loaded with corn, which was subsequently carried to Tema, Ghana, where the vessel was delayed for 14 days, 23 hours, and ten minutes beyond the allowable time for discharge of cargo. Atlanta subsequently billed Cheswick $59,861.20 for this delay time (demurrage). Alleging that a failure by Atlanta to comply with the charter party caused the delay in Tema, Cheswick has refused to pay the demurrage charges.

Atlanta further alleges that an arbitration clause was attached to and incorporated in the charter party, by which clause the parties are to refer any dispute between them to arbitrators in New York.[1] Pursuant to that arbitration clause, Atlanta demanded arbitration and appointed its arbitrator. Letter from Philip J. Curtin to Cheswick, dated Feb. 9, 1978, attached as Exhibit B to Notice of Motion. Cheswick then nominated its arbitrator and advised Atlanta that Cheswick would soon select legal counsel. Letter from B. L. Courtman to Zock, Petrie, Reid & Curtin, dated Mar. 14, 1978, attached *id.* as Exhibit C. Atlanta next advised Cheswick that the third arbitrator had been selected and asked for the name of the latter's legal counsel so that a date for arbitration could be set. Letter from Philip J. Curtin to Cheswick, dated

Apr. 19, 1978, attached *id.* as Exhibit D. Because Cheswick failed to reply by late May, Atlanta wrote the panel of arbitrators asking them to set a date for the first hearing. *Id.* Exhibit E.

Correspondence between counsel for the two parties followed. Counsel for Cheswick asked for information and for more time to review the matter, explaining that "we do not often become involved in these types of disputes." *Id.* Exhibit F. Counsel for Atlanta provided the information requested and asked Cheswick for a prompt decision on whether to proceed with arbitration. *Id.* Exhibit G. Finally, Cheswick, by its counsel, responded that it would not submit to arbitration, explaining that the arbitration clause was ambiguous and that it would not be bound by the clause. It would "express no opinion" as to the legal effect of the panel's having already been selected. Finally, Cheswick alleged that Atlanta breached the charter party because the ship arrived in Tema late, causing infestation of the grain cargo, which in turn allegedly caused claims to be made against Cheswick and resulted in the excess discharge time. *Id.* Exhibit H.

Atlanta argues that the charter party is a valid contract containing an unambiguous arbitration agreement that falls under section 1 of the Act, that the petition was served on Cheswick pursuant to section 4 of the Act, that Cheswick's appointment of an arbitrator must be viewed as a voluntary submission of the matter to arbitration, and that, accordingly, Atlanta is entitled to an order directing that arbitration proceed in the manner provided in the charter party. Cheswick responds that the Court lacks the personal and subject matter jurisdiction and venue to issue such an order. It argues further that the Petition fails to allege the existence of a valid charter party and that the Petition must therefore be dismissed. Finally, Cheswick argues that the arbitra-

---

1. The New York Produce Exchange Arbitration Clause, incorporated into the charter party by clause 27 of the charter party, Exhibit A attached to Notice of Motion, provides:

    Should any dispute arise between the Owners and the Charterers, the matter in dispute shall be referred to three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men.

tion clause is not valid because it is ambiguous. Cheswick asserts that these last two issues are for the Court to decide, if it has jurisdiction, before it may direct arbitration.

### Discussion

Section 4 of the Act entitles "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to petition any United States district court with jurisdiction "for an order directing that such arbitration proceed in the manner provided for in such agreement." The Court has subject matter jurisdiction because this action is one in admiralty. *See id.* Before ordering the parties to proceed with arbitration, however, the Court must be "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." *Id.* If there is a genuine issue as to whether the controversy is referable to arbitration, the Court must proceed summarily to a trial of the issue. *Id.; see, e. g., Interocean Shipping Co. v. National Shipping and Trading Corp.,* 462 F.2d 673, 676 (2d Cir. 1972); *Almacenes Fernandez, S.A. v. Golodetz,* 148 F.2d 625, 628 (2d Cir. 1945). Because it is Cheswick's position that the existence of the alleged agreement is in issue, Memorandum at 8–9, the Court will address this assertion before proceeding to the jurisdictional question.[2]

### The Contract

To make out a genuine issue as to the existence of an alleged contract, a party must deny unequivocally the existence of the contract, and it should offer some evidence to substantiate the denial. *Golodetz, supra,* 148 F.2d at 628; *accord, Interocean Shipping Co., supra,* 462 F.2d at 676. Cheswick has failed to meet that standard. It refers to the fact that it had not signed the charter party. Memorandum at 2. It signature, however, is unnecessary to a finding that a valid contract exists. *A/S Custodia v. Lessin International, Inc.,* 503 F.2d 318, 320 (2d Cir. 1974); *Fisser v. International Bank,* 282 F.2d 231, 233 (2d Cir. 1960); *Starkman v. Seroussi,* 377 F.Supp. 518, 522 (S.D.N.Y.1974). Rather, general contract principles are applicable, and the question is whether the parties reached a meeting of the minds. *A/S Custodia, supra; Fisser, supra; Starkman, supra.*

On these facts, the inescapable conclusion is that the parties had reached a meeting of the minds on *some* charter party, for not only did Atlanta provide cargo space and Cheswick load, ship, and discharge the corn cargo, but the parties even proceeded so far as to select a panel of arbitrators.[3] *See* discussion of facts *supra.* Cheswick denies that it entered the particular charter party that Atlanta attached to its Petition. Answer ¶ 5, referring to Exhibit A attached to Petition. Cheswick, however, had previously argued to Atlanta that the vessel's proceeding to an intermediate port before reaching Tema, Ghana, "contrary to the preamble as well as Clause

---

**2.** Cheswick "concedes that a finding of a valid agreement to arbitrate in New York would vest the New York courts with jurisdiction." Memorandum at 4. Cheswick appears, in context, to refer to subject matter jurisdiction. *See id.* at 4–5. Subject matter jurisdiction, however, flows not from the finding that a valid agreement to arbitrate in New York was made, but rather from the independent basis of an action in admiralty. 9 U.S.C. § 4.

Cheswick also contends that before the Court may assume subject matter jurisdiction, it must find that it has in personam jurisdiction and that a valid agreement to arbitrate in New York was made. Memorandum at 4–5. Under section 4 of the Act, however, whether in personam jurisdiction exists may depend on whether the parties reached an agreement to arbitrate in a particular forum. *See* discussion of jurisdiction *infra.* In such cases, a court always has jurisdiction to determine whether the parties had made an agreement to arbitrate. *Kulukundis Shipping Co., S.A. v. Amtorg Trading Corp.,* 126 F.2d 978, 981 (2d Cir. 1942); *see* 9 U.S.C. §§ 1–4. Accordingly, the Court will first determine whether such an agreement was made before proceeding to the question of the sufficiency of process.

**3.** Because the Court concludes, on all the circumstances of the case, that Cheswick must proceed with arbitration, it is unnecessary to address Atlanta's contention that Cheswick's selection of an arbitrator must be viewed as a voluntary submission to arbitration.

29 of the charter party . . . was a fundamental breach of the charter party and constituted a gross deviation." Letter from Bruce W. Bernard to Philip J. Curtin, dated July 27, 1978, attached as Exhibit H to Notice of Motion. Obviously Cheswick is aware that some charter party existed. Furthermore, if Cheswick argues that the charter party provided by Atlanta is not the charter party actually agreed upon, it should provide the Court with the real one. It has the affirmative obligation to provide some evidence beyond a mere denial that it agreed upon the particular charter party submitted by Atlanta, *see Golodetz, supra,* and it has wholly failed to provide such evidence. If there were a real doubt as to whether a charter party existed, the Court would proceed summarily to a trial of that issue rather than basing its decision on briefs, affidavits, and accompanying documents. *See* 9 U.S.C. § 4; *A/S Custodia, supra,* 503 F.2d at 319. But here the conduct of the parties in acting pursuant to some agreement, the charter party and other documents supplied by Atlanta, and the utter failure of Cheswick to provide some modicum of contrary evidence—which must be in its hands if it exists—establish without a doubt the existence of the charter party.

Cheswick also argues that the arbitration clause is ambiguous. Memorandum at 10. This argument is without merit. The clause in question, the New York Produce Exchange Arbitration Clause,[4] is a standard arbitration clause. *See* G. Gilmore and C. L. Black, Jr., *The Law of Admiralty* 1007 (2d ed. 1975). *See also, e. g., Victory Transport, Inc. v. Comisaria General de Abastecimientos y Transportes,* 336 F.2d 354, 356 (2d Cir. 1964), *cert. denied,* 381 U.S. 934, 85 S.Ct. 1763, 14 L.Ed.2d 698 (1965). Its terms are simple, clear, and decidedly unambiguous.

*Jurisdiction*

Cheswick contends that the Court lacks in personam jurisdiction over it because of the alleged insufficiency of service of process. In addressing this contention, the Court looks first to the charter party. If the parties agreed to arbitrate in New York, then it is as if they were physically present in New York; they have consented in advance to New York jurisdiction. *Merrill Lynch, Pierce, Fenner & Smith v. Lecopulos,* 553 F.2d 842, 844 (2d Cir. 1977); *Hamilton Life Insurance Co. v. Republic National Life Insurance Co.,* 408 F.2d 606, 612–13 (2d Cir. 1969); *Victory Transport, Inc., supra,* 336 F.2d at 363; *Orion Shipping & Trading Co. v. Eastern States Petroleum Corp. of Panama, S.A.,* 284 F.2d 419, 421 (2d Cir. 1960); *Farr & Co. v. Cia Intercontinental de Navegacion de Cuba,* 243 F.2d 342, 346–47 (2d Cir. 1957); *Trade and Transport, Inc. v. Directorate General of Commerce, Saigon,* 310 F.Supp. 463, 464–65 (S.D.N.Y. 1969). As the Court has found, *supra,* the parties did agree to arbitrate in New York and, in such a case, the sole function of service of process is to give notice to the respondent that proceedings have been commenced against it. *Victory Transport, Inc., supra,* 336 F.2d at 364; *Trade and Transport, Inc., supra,* 310 F.Supp. at 465; *see Merrill Lynch, Pierce, Fenner & Smith, supra,* 553 F.2d at 845. Registered mail is a sufficient means of giving this notice. *Orion Shipping & Trading Co., supra,* 284 F.2d at 421; *Farr, supra,* 243 F.2d at 347–48; *see Victory Transport, Inc., supra,* 336 F.2d at 364 (ex parte order for service by registered mail). *See also Merrill Lynch, Pierce, Fenner & Smith, supra,* 553 F.2d at 845 (the only notice received was service of motion papers on defendant's attorneys). Here Cheswick concedes that it received notice by a certified mailing of the Petition and Notice of Motion, return receipt requested, to both its office and to its counsel. No unfairness results when actual notice has been given. *Merrill Lynch, Pierce, Fenner & Smith, supra,* 553 F.2d at 845; *Trade and Transport, Inc., supra,* 310 F.Supp. at 465. In urging that *Farr, supra,* was wrongly decided, Cheswick asks this Court not only to disregard it and the line of controlling cases that proceed from it, but also, in

---

**4.** *See* note 1 *supra.*

effect, to declare the arbitration clause a nullity. *See Merrill Lynch, Pierce, Fenner & Smith, supra,* 553 F.2d at 844, *quoting Victory Transport, Inc., supra,* 336 F.2d at 363. Such a result is not only unsupportable in this case, but it would merely further delay the resolution of a controversy that should have been disposed of months ago.[5]

### Conclusion

Accordingly, Cheswick is directed to proceed with the arbitration in the manner agreed upon in the charter party, and the parties are further directed to submit to arbitration on the issue set out in Cheswick's counterdemand.

It is hereby further ordered that this action be placed on the Suspense Docket pursuant to Rule 20(A) of the Calendar Rules of the Southern District.

So ordered.

---

**5.** Where the parties have agreed to arbitrate in New York and the petition was filed in this district, the parties are presumed to have con-

sented to venue in this Court. *Farr, supra,* 243 F.2d at 346.