In the Matter of the **ARBITRATION BETWEEN INTERCARBON BERMUDA, LTD.,** Petitioner,

and

**CALTEX TRADING AND TRANSPORT CORPORATION,** Respondent and Cross–Petitioner.

**No. 91 Civ. 4631 (MJL).**

United States District Court, S.D. New York.

Jan. 12, 1993.

Kennedy & Lillis, New York City, for
petitioner;  by John T. Lillis, Jr.

Cleary, Gottlieb, Steen & Hamilton, New York City, for respondent; by George J. Grumbach, Jr., Lawrence B. Friedman, and Paul S. Giordano.

## OPINION AND ORDER

LOWE, District Judge.

Before this Court is the petition of Inter-Carbon Bermuda Ltd. ("InterCarbon") seeking to have part of an arbitration award dated April 10, 1991 vacated and to have that portion of the dispute reheard before a new arbitrator. Also before this Court is the motion of respondent and cross-petitioner Caltex Trading and Transport Corporation ("Caltraport") seeking dismissal of the petition to vacate and confirmation of the arbitrator's award and preliminary award. For the reasons set forth below, Caltraport's motions to dismiss InterCarbon's petition to vacate the arbitration award is denied; InterCarbon's petition to vacate the award is also denied; and Caltraport's petition to confirm the award is granted.

## BACKGROUND

The parties to this dispute contracted in 1981 for the purchase and sale of petroleum products. Their agreement provided that "[t]his contract shall be governed by the laws of the state of New York and any dispute arising hereunder shall be settled by arbitration at New York, N.Y." A dispute arose over performance of the contract, and in 1983, InterCarbon demanded arbitration. In 1987, InterCarbon sued Caltraport in this District Court to compel arbitration. Judge Ward found in favor of InterCarbon, and his order compelling arbitration was upheld on appeal.

Arbitration commenced with the parties' Submission Agreement dated May 17, 1990.

Based on documentary evidence alone, the arbitrator made a Preliminary Award on October 23, 1990, concluding in favor of Caltraport on issues of contract interpretation. On April 10, 1991, and again without holding any live hearings, the arbitrator made his final Award, concluding in favor of Caltraport on the remaining issues and refusing to re-open the issues decided in the Preliminary Award.

InterCarbon petitions this Court to vacate that part of the final Award which decided against reopening the Preliminary Award, and to order the subject of the Preliminary Award reheard by a new arbitrator. Notice of the petition was sent by mail from InterCarbon's New York attorneys to Caltraport's New York attorneys, and was received by the latter on July 10, 1991. Both parties are foreign companies.

## DISCUSSION

The parties and the Court agree that this dispute is governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 3 U.S.T. 2517, T.I.A.S. No. 6997 [hereinafter the "Convention"], as implemented by 9 U.S.C. §§ 201–08.[1]

### A. Jurisdiction

The first issue to be addressed is whether this Court has jurisdiction to entertain InterCarbon's petition. Caltraport argues that the Court lacks jurisdiction because service was not carried out by a United States marshal in accordance with 9 U.S.C. § 12,[2] or in any other manner as provided by Rule 4 of the Federal Rules of Civil Procedure. InterCarbon argues that service upon Caltraport's attorney was sufficient under Section 12, and that in any event the proper fallback provision of the

---

1. The dispute is between foreign parties, not "entirely between citizens of the United States." 9 U.S.C. § 202.

2. Section 12 states:
   Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered. If the adverse party is a resident of the district within which the award was made, such ser-

vice shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court. *If the adverse party shall be a nonresident then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court.*
9 U.S.C. § 12 (emphasis added).

Federal Rules of Civil Procedure is Rule 5 rather than Rule 4. The Court finds in favor of InterCarbon on the jurisdictional issue, though not for the reasons given by InterCarbon.

### 1. Sufficiency of Service

■ Section 208 of the federal arbitration statute provides that Sections 1 through 12 apply to arbitration under the Convention "to the extent that [Sections 1 through 12] are not in conflict with [Chapter 2, Sections 201 through 208] or the Convention as ratified by the United States." 9 U.S.C. § 208. Section 12 does not squarely conflict with Sections 201–08 or the Convention, but neither does it give any direction for service on a foreign party. Instead, for a nonresident of the district where an award is made, Section 12 requires service by a marshal in any district where the nonresident is found. The problem is that foreign parties will not necessarily be found in *any* district. Requiring parties to satisfy Section 12 might amount to requiring them to do the impossible.[3]

■ In these circumstances, Section 12 cannot be taken as the proper standard for service of process. Recourse must be had to the Federal Rules of Civil Procedure. The parties, however, disagree as to which of the Federal Rules is the proper fallback provision: Rule 4 or Rule 5. Section 12 does offer some guidance on this point, because it distinguishes between the manner of service upon a resident and the manner of service upon a nonresident. For a resident, service is to be in the manner "prescribed by law for service of notice of

motion in an action in the same court." 9 U.S.C. § 12. For a nonresident, service is to be made "in like manner as other process of the court." *Id.*

. Caltraport aptly cites the Second Circuit's holding on an identical question involving 9 U.S.C. § 9, which governs confirmation of arbitration awards. *Reed & Martin, Inc. v. Westinghouse Elec. Corp.,* 439 F.2d 1268, 1277 (2d Cir.1971) ("The phrase 'in like manner as other process of the court' found in § 9 of the Arbitration Act refers to Fed.R.Civ.P. 4 on the accomplishment of appropriate service ..."). Sections 9 and 12 employ the same language regarding service upon nonresidents.[4] The Court agrees with Caltraport that InterCarbon's interpretation is all but foreclosed by *Reed.* And that conclusion is supported by the structure of Section 12, which designedly refers residents to the procedures for service of a notice of motion, while referring nonresidents to the procedures for service of *process.*

Thus far the Court has concluded that Section 12 provides no method of service for foreign parties not resident in any district of the United States, and that the proper fallback provision for service of process is Fed.R.Civ.P. 4. The next question is whether InterCarbon satisfied any of the procedures for service of process under Rule 4, and the answer is that it did not. InterCarbon practically admits this by its attempt to redirect the Court's attention from Rule 4 to Rule 5, and by its failure to claim that it met the requirements of Rule 4. Petitioner's Reply Memorandum at 6. Examination of Rule 4 confirms that simply sending a petition from one attorney to

---

**3.** Section 12 is an anachronism not only because it cannot account for the internationalization of arbitration law subsequent to its enactment, but also because it cannot account for the subsequent abandonment of United States marshals as routine process servers. Amendments to the Federal Rules of Civil Procedure in the early 1980s substantially changed the identity of those who may serve process. "[P]rior to 1980, the marshal was the stated summons server unless there was a person 'specially appointed' by the court to make service." *Changes in Federal Summons Service Under Amended Rule 4 of the Federal Rules of Civil Procedure,* 96 F.R.D. 81, 94 (1983). The "ostensibly principal purpose" of the amendments was to "tak[e] the

marshals out of summons service almost entirely." *Id.*

**4.** Section 9 states in pertinent part that

If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court. If the adverse party shall be a nonresident, then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court.

another by regular mail does not satisfy any of that rule's procedures for service.

■ Two parts of Rule 4 apply here. First, Rule 4(e)[5] provides for service in accordance with the New York State practice for service upon foreign corporations.[6] Second, Rule 4(i) provides for methods of service alternative to those in Rule 4(e) when "service is to be effected upon [a] party in a foreign country." Fed.R.Civ.P. 4(i)(1).[7] Neither of these provisions is satisfied by sending a document from one attorney to another by regular mail.

Defects in service of process may nevertheless be excused where considerations of fairness so require, at least in cases that arise pursuant to arbitration proceedings. In one case, a motion to stay a court action pending arbitration was served on a foreign party's attorneys, and was held sufficient as a demand for arbitration. *Merrill Lynch, Pierce, Fenner & Smith v. Lecopulos,* 553 F.2d 842, 844–45 (2d Cir.1977). The Court found jurisdiction to be unquestionable because the parties agreed to arbitrate in New York, and it then explained that "[r]egardless of the precise legal status of [the] attorneys ... no unfairness results from giving effect to the notice they actually received." *Id.* at 845.

Similarly, another case found that an agreement to arbitrate gave rise to jurisdiction, and that with jurisdiction established, "the sole function of process ... was ... to notify the appellant that proceedings had commenced." *Victory Transp., Inc. v. Comisaria General de Abastecimientos y Transportes,* 336 F.2d 354, 363, 364 (2d Cir.1964). Other facts suggested that service might have been adequate under the rules, but a concern for basic fairness was the starting point for analysis.

■ In sum, InterCarbon should not be held to the terms of Section 12 of the Arbitration Act, but it also failed to adhere to any of the applicable fallback rules found in the Federal Rules of Civil Procedure. Considerations of fairness, however, may excuse that failure (at least in arbitration cases).

### 2. Waiver of Jurisdictional Objection

Another consideration—one that the parties initially failed to address[8]—is whether Caltraport waived its jurisdictional defense when it accompanied its motion to dismiss with a "cross-motion" for confirmation of the arbitration award.[9] The issue has a rich and conflicted past. Prior to enactment in 1938 of the Federal Rules of Civil Procedure, a defendant who combined a counterclaim with an objection to service of process waived that jurisdictional objection. *Merchants Heat & Light Co. v. J.B. Clow & Sons,* 204 U.S. 286, 289, 27 S.Ct. 285, 286, 51 L.Ed. 488 (1907). A defendant who wished to preserve the objection would have to challenge jurisdiction in a special appearance. The counterclaim could then

**5.** Rule 4(e) states in part that

Whenever a statute ... of the state in which the district court is held provides (1)'for service of a summons, or of a notice ... upon a party not an inhabitant of or found within the state, ... service may ... be made under the circumstances and in the manner prescribed in the statute or rule.

**6.** *See* N.Y.Civ.Prac.L. & R. § 311 (McKinney 1990) (Personal service upon a foreign corporation to be made by delivering summons "to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service.").

**7.** The avenues for service under Rule 4(i)(1) are essentially as follows:

(A) in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction; or (B) as directed by the foreign authority in response to a letter rogatory, when service in either case is reasonably calculated to give actual notice; or (C) upon an individual, by delivery to the individual personally, and upon a corporation or partnership or association, by delivery to an officer, a managing or general agent; or (D) by any form of mail, requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served; or (E) as directed by order of the court.

**8.** The issue was addressed by the parties in supplemental memoranda submitted in response to an Order of this Court dated October 21, 1992.

**9.** Caltraport's "cross-motion" is indistinguishable from a counterclaim for purposes of the following discussion.

be made part of a subsequent general appearance if the objection failed, or the counterclaim could be brought as a separate action if the objection succeeded.

The question is whether the rule of *Merchants Heat* survived enactment of the Federal Rules of Civil Procedure—that is, whether the language or scheme of the Federal Rules is compatible with retention of *Merchants Heat*. It is not a novel question, but courts are divided over the correct answer. *See* Jean F. Rydstrom, Annotation, *Joinder of Counterclaim Under Rule 13(a) or 13(b) of Federal Rules of Civil Procedure with Jurisdictional Defense Under Rule 12(b), as Waiver of Such Defense,* 17 A.L.R.Fed. 388 (1973). The Second Circuit is undecided. *See, e.g., Cargill, Inc. v. Sabine Trading & Shipping Co.,* 756 F.2d 224, 229 (2d Cir.1985) (observing that "federal law on this issue appears to be in disarray").

■■■ Common law procedure supplements the Federal Rules of Civil Procedure, *see New Hampshire Fire Ins. Co. v. Scanlon,* 362 U.S. 404, 406, 80 S.Ct. 843, 845, 4 L.Ed.2d 826 (1960), so if both *Merchants Heat* and the Federal Rules can coexist, there is no reason to ignore the preexisting common law rule. The common law rule is displaced, however, to the extent that it is unworkable within the scheme of the Federal Rules. Federal common law is, of course, " 'subject to the paramount authority of Congress.' " *Northwest Airlines, Inc. v. Transport Workers Union of Am., AFL–CIO,* 451 U.S. 77, 95, 101 S.Ct. 1571, 1582, 67 L.Ed.2d 750 (1981) (quoting *New Jersey v. New York,* 283 U.S. 336, 348, 51 S.Ct. 478, 481, 75 L.Ed. 1104 (1931)). And "[o]nce Congress addresses a subject, even a subject previously governed by federal common law, the justification for lawmaking by the federal courts is greatly diminished." *Id.* 451 U.S. at 95 n. 34, 101 S.Ct. at 1583 n. 34. Accordingly, alteration of the *Merchants Heat* rule may follow not only from explicit renunciation in the Federal Rules, but from implicit incompatibility with the overall scheme of the Rules.

Courts have divided over a variety of factors in analyzing the issue. Some look to the text of Rule 12(b), which states that jurisdictional defenses are not waived when they are "joined with one or more other defenses or objections in a responsive pleading or motion." One interpretation equates counterclaims with "other defenses," so that jurisdictional defenses are not waived when they are joined with a counterclaim. *E.g., Keil Lock Co. v. Earle Hardware Mfg. Co.,* 16 F.R.D. 388 (S.D.N.Y.1954). The opposing view is that counterclaims do not count among "other defenses or objections," so waiver is not prevented by Rule 12(b); waiver of the jurisdictional defense is found because no clear departure from the *Merchants Heat* rule is found. *See e.g., Merz v. Hemmerle,* 90 F.R.D. 566, 569 (E.D.N.Y.1981); *Beaunit Mills, Inc. v. Industrias Reunidas F. Matarazzo, S.A.,* 23 F.R.D. 654 (S.D.N.Y. 1959). And the Supreme Court has indicated that *Merchants Heat* retains at least some vitality. *Freeman v. Bee Mach. Co.,* 319 U.S. 448, 453, 63 S.Ct. 1146, 1149, 87 L.Ed. 1509 (1943).

A number of courts have paid heed to the goal of the Federal Rules to streamline the litigation process in general and to eliminate the need for special appearances in particular. *E.g., Neifeld v. Steinberg,* 438 F.2d 423, 429 (3rd Cir.1971); *Lomanco, Inc. v. Missouri Pac. R.R. Co.,* 566 F.Supp. 846 (E.D.Ark.1983); *Keil,* 16 F.R.D. at 388. Others have effectively retained the need for a special appearance by instructing that plaintiffs can challenge personal jurisdiction with a preliminary motion, and file a counterclaim if that motion is unsuccessful. *See North Branch Prods., Inc. v. Fisher,* 284 F.2d 611, 615 (D.C.Cir.1960). *But see Chase v. Pan–Pacific Broadcasting, Inc.,* 750 F.2d 131 (D.C.Cir.1984) (narrow interpretation of *North Branch*).

Yet another line of cases distinguishes between compulsory counterclaims and permissive counterclaims, reasoning that a compulsory counterclaim—a creature of Federal Rule 13(a)—is not a voluntary invocation of jurisdiction in the way that *Merchants Heat* conceived of it. *E.g., Neifeld,* 438 F.2d at 430 n. 13; *Dragor Shipping*

*Corp. v. Union Tank Car Co.,* 378 F.2d 241, 244 (9th Cir.1967); *Hasse v. American Photograph Corp.,* 299 F.2d 666 (10th Cir. 1962); Rydstrom, *supra,* at 393. Others accord protection to compulsory and permissive counterclaims alike. *E.g., Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1330 n. 1 (9th Cir.1984). The least common denominator, at any rate, is that a compulsory counterclaim should not waive a jurisdictional defense.

*Merchants Heat* did not account for compulsory counterclaims, because it predated their existence. *See* 204 U.S. at 290, 27 S.Ct. at 286 ("[T]he right to [counterclaim] is of modern growth, and is merely a convenience that saves bringing another suit, not a necessity of the defense."). But the same reasons of fairness that led the *Merchants Heat* Court to support a waiver in the case of voluntary counterclaims militate against a waiver in the case of compulsory counterclaims.

■ There is not much authority on the question of whether a petition to confirm an arbitration award is compulsory in response to a petition to vacate the award. But those courts that have considered the issue have concluded that the petition to confirm is compulsory. *Burlington Northern, Inc. v. American Ry. Supervisors Ass'n,* 527 F.2d 216, 223 (5th Cir.1975); *CSX Transp., Inc. v. United Transp. Union,* 765 F.Supp. 797, 809 (W.D.N.Y.), *rev'd on other grounds,* 950 F.2d 872 (2d Cir. 1991); *White Motor Corp. v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of Am., UAW, Local Union No. 932,* 365 F.Supp. 314, 317 (S.D.N.Y.1973), *aff'd,* 491 F.2d 189 (2d Cir.1974). The petitions to vacate and to confirm in the present case clearly "arise[ ] out of the [same] transaction or occurrence," Fed.R.Civ.P. 13(a), and the policy of expeditiousness behind Rule 13(a) certainly would be served by including a petition to confirm in response to a petition to vacate. The Court concludes that Caltraport's petition to confirm was

compulsory under Rule 13(a). This conclusion weighs against waiver of Caltraport's jurisdictional defense.

A few courts seem to condition waiver upon success of the jurisdictional defense. *See Neifeld,* 438 F.2d at 431 n. 17; *Lomanco,* 566 F.Supp. at 851. That approach prevents the seeming injustice of permitting a party to appear for his own purposes while being absent for his adversary's purposes, but it imposes a condition that swallows the rule—one is able to combine counterclaims only with meritless jurisdictional defenses.

■ A final consideration is suggested by the Second Circuit's *Cargill* opinion, which states that "[w]here there is no contrary federal rule, it is appropriate to apply state procedure in diversity cases." *Cargill,* 756 F.2d at 229. New York procedure permits a counterclaim without waiver of jurisdictional defenses. *See id.* (citing *Calloway v. National Servs. Indus., Inc.,* 93 A.D.2d 734, 461 N.Y.S.2d 280, 282 (1983)). Although this is not a diversity case, reference to state procedure may be appropriate because the parties have chosen New York law to govern their dispute.[10]

### 3. Analysis

The foregoing summary shows that there are weighty concerns both favoring and opposing Caltraport's motion to dismiss for defective service of process. Resolution of the issue requires evaluation of considerations of fairness and efficiency, to which the Federal Rules of Civil Procedure refer a court in the absence of more precise direction. *See* Fed.R.Civ.P. 1 ("These rules ... shall be construed to secure the just, speedy, and inexpensive determination of every action."). After a careful assessment of each party's interests, the Court finds that Caltraport's motion to dismiss must be denied.

Regarding the waiver issue, the most important of the many factors to be considered is the compulsory nature of Caltraport's petition to confirm. A finding of

---

**10.** The main agreement contains a Part A, paragraph 13 and a Part B, paragraph 10, both of which state: "This contract shall be governed by the laws of the state of New York and any dispute arising hereunder shall be settled by arbitration at New York, N.Y."

waiver would do injustice to those who possess truly meritorious jurisdictional defenses, and who file counterclaims only because of the rules' compulsion. The Court finds that Caltraport did not waive its jurisdictional defense by bringing a compulsory petition.

A finding of waiver would also needlessly compromise the goal of procedural efficiency, by requiring a special appearance to challenge jurisdiction prior to any counterclaim. That would be especially ill-advised where arbitration is involved, because an action to vacate an arbitration award must be brought within three months of the award, 9 U.S.C. § 9, while an action to confirm can be brought for a full year after the award. 9 U.S.C. § 12. Every party with a jurisdictional defense to a petition to vacate would have an incentive to first contest jurisdiction and then bring a separate action for confirmation after defeating jurisdiction (and also after the three month period had passed for possible renewal of service of process). That would defeat the policy of the Federal Rules to consolidate and expedite adjudication.

The conclusion in this case therefore does not preclude any party in the future from simultaneously submitting a petition to confirm an arbitration award and a motion to dismiss a petition to vacate the same award. A petition to vacate might conceivably be served so improperly that a petition to confirm could proceed while the petition to vacate were defeated by a jurisdictional defense.

█ The Court nevertheless finds that Caltraport's motion to dismiss must be denied. Although Caltraport did not waive its jurisdictional defense, waiver is not the only basis for denying an objection to service of process; considerations of basic fairness are important as well. The Second Circuit's decisions in *Merrill Lynch* and *Victory Transport* establish that imperfect service of process in an arbitration case may not be fatal where jurisdiction over the arbitration is clear and where notice is sufficient to apprise the opposing party of the action being taken. That is exactly the situation here. Caltraport "recognizes and has never disputed that both InterCarbon ... and itself are subject to the Court's personal jurisdiction in connection with their respective pending motions for relief." Respondent's Supplemental Memorandum at 1.

Caltraport has suffered no significant prejudice by InterCarbon's failure to adhere to proper methods of service. The core of its argument instead seems to be that it somehow suffered prejudice because petitions to vacate must be filed within three months, and InterCarbon's petition was not served properly within three months. But Caltraport fails to connect the improper service with any delay or lack of notice. To the contrary, the petition to vacate seems to have spurred Caltraport to file its petition to confirm, so that the proceedings were sped along rather than hindered.

The Court acknowledges this Circuit's position that "there must be compliance with the terms of the rule, and absent waiver, incomplete or improper service will lead the court to dismiss the action unless it appears that proper service may still be obtained." *Grammenos v. Lemos*, 457 F.2d 1067, 1070 (2d Cir.1972); *see also Grosser v. Commodity Exchange, Inc.*, 639 F.Supp. 1293, 1316 (S.D.N.Y.1986) ("[W]hile we are reluctant to dismiss a complaint in a situation in which the putative defendant has not suffered actual prejudice ... failure to comply with the basic terms for service of process will deprive a court of jurisdiction"), *aff'd*, 859 F.2d 148 (2d Cir.1988). In the context of arbitration, however, this Circuit has enforced service rules more liberally. *Merrill Lynch*, 553 F.2d at 844–45; *Victory Transport*, 336 F.2d at 364.

Goals of regular procedure weigh in balance with goals of fairness. In this case, Caltraport agreed to arbitrate in New York, participated in proceedings here, and filed a counterclaim to confirm the arbitration award. Service of process by InterCarbon was defective in form only; Caltraport received timely notice of the petition to vacate. "The sole function of process in this case was ... to notify ... that pro-

ceedings had commenced," *id.*, and that function was performed by InterCarbon's defective service. The decisions of this Circuit, taken as a whole, lead this Court to conclude that fairness requires rejection of Caltraport's attempt to use defective service of process to avoid a full review in this case.

## B. Vacation and Confirmation of Award

InterCarbon seeks to have this Court vacate that part of the final Award which decided against reopening the Preliminary Award, and to order the subject of the Preliminary Award reheard by a new arbitrator. Caltraport seeks to have the award confirmed.

A decision to vacate or confirm an arbitration award covered by the Convention is subject to the Convention's instruction that a court must confirm an award "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified" in the Convention. 9 U.S.C. § 207. Among those grounds are that "the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place." Convention, art. V(1)(d). The agreement between the parties here did not establish any particular arbitral procedure, so the question is whether the procedure was in accordance with the law of the United States. Arbitration procedure in the United States is defined principally by the provision that lists grounds for vacating awards: 9 U.S.C. § 10.[11] Thus, a consideration of one set of standards will determine the questions of whether to vacate and whether to confirm.[12]

InterCarbon claims that the arbitrator was "guilty of misconduct ... in refusing to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a)(3). InterCarbon rests its argument upon one basic fact: that the arbitrator decided certain contractual issues without hearing live testimony, contrary to InterCarbon's express wishes. The Court agrees that the failure to hear live testimony compromised the fullness of InterCarbon's hearing, and that the arbitrator seems to have ignored InterCarbon's repeated pleas to present live witnesses. The Court disagrees, however, that those facts prevent confirmation of the award.

"Misconduct" within the meaning of Section 10 will not be found unless the aggrieved party was denied a "fundamentally fair hearing." *Roche v. Local 32B–32J Serv. Employees Int'l Union*, 755 F.Supp. 622, 624 (S.D.N.Y.1991). InterCarbon asserts that the "paper hearing" it received was not fundamentally fair. Caltraport, on the other hand, points out that the procedure followed by the arbitrator is analogous to the unquestionably fair procedure for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Respondent's Memorandum of Law at 18. Like Rule 56, which precludes summary judgment if there is a "genuine issue as to any material fact," Section 10 requires an arbitrator to hear evidence that is "pertinent and material." 9 U.S.C. § 10(a)(3). Although the exact standards for a Rule 56 determination do not apply here, the propriety of the arbitrator's action does depend on the same underlying concern: the extent to which issues of fact were in dispute,

**11.** The parties have not questioned whether the Section 10(a)(3) ground—"refusing to hear evidence"—is applicable in arbitrations that fall under the Convention. Past decisions have avoided that decision by finding that even if Section 10 were incorporated by Section 208 into Convention cases, the Section 10 claim would fail. *See Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier (RAKTA)*, 508 F.2d 969, 977 (2d Cir.1974); *Biotronik Mess-und Therapiegeraete GmbH & Co. v. Medford Medical Instrument Co.*, 415 F.Supp. 133, 137, 140 (D.N.J.1976). The same is true in the present case—the Court rejects InterCar-

bon's Section 10(a)(3) grievance. And that conclusion is solidified by the knowledge that Convention cases are to be considered in light of a "general pro-enforcement bias." *Parsons*, 508 F.2d at 973.

**12.** InterCarbon has not responded at length to Caltraport's motion to confirm. It has, however, presented arguments on Section 10 issues in the course of pursuing its petition to vacate. That petition will therefore be treated as InterCarbon's response to Caltraport's motion to confirm.

so that a fuller hearing—including live testimony—would ,be required to reach a just decision.

The factual dispute alleged by InterCarbon concerns the intentions of the contracting parties. The contract has two separate portions—a main agreement and a standard form attachment—that are in dispute here. The attachment (entitled "Product Sales Conditions Issue 7–A") is standard for Caltraport agreements, and prevents either party from recovering consequential damages, including lost profits.[13] But attachment 7–A also states that the main agreement will override attachment 7–A "[i]n the event of any inconsistency" between the two.[14] InterCarbon claims that the parties expressed an intent inconsistent with paragraph 7–A when they included a provision in the main agreement choosing New York law to govern disputes.[15] According to InterCarbon, New York law provides for the recovery of consequential damages and lost profits, and the parties intended such remedies to be available by their inclusion of the choice of law provision.

Standing alone, the idea that a general choice of law provision can be interpreted as overriding a specific damages clause is unusual, violating the maxim that the specific overrides the general in contract interpretation. *See John Hancock· Mut. Life Ins. Co. v. Carolina Power & Light Co.,* 717 F.2d 664, 669 n. 8 (2d Cir.1983) ("New York law recognizes that definitive, particularized contract language takes precedence over expressions of intent that are general, summary, or preliminary."). Perhaps that is why InterCarbon invoked the standard form's provision that the main agreement overrides the form in case of conflict. But even that left InterCarbon with the difficult task of showing that the main agreement's choice of law provision

expressed a specific intent on damages that conflicted with the standard form's damages provision. InterCarbon therefore sought to introduce oral testimony (parol evidence) on the meaning of the contract from the two persons who were primarily responsible for it: Mr. Henri Lehner of InterCarbon and Mr. John White of Caltraport. The arbitrator, however, never held hearings, thus limiting the evidentiary role of White and Lehner to affidavits they had provided to InterCarbon.

According to InterCarbon, the White affidavit demonstrates that the parties did not mean to exclude the recovery of lost profits. In pertinent part, White states:

> With respect to Issue 7A clause 9 "Damages", it was my understanding that this clause was intended to specify that neither party to the agreement would be liable for "consequential" damages, which I always understood to be damages involving one or more third parties and one of the two parties to the agreement. I did not understand this clause 9 to preclude one of the parties to the agreement from seeking damages from the other party to the agreement through whatever remedies were properly available under the terms of the agreement.

White Affidavit ¶ 8.

The problem with the White affidavit, from the perspective of establishing a dispute that would prevent summary treatment in an arbitration, is its ambiguous circularity. That clause 9 does not "preclude one of the parties ... from seeking damages ... through whatever remedies were properly available under the terms of the agreement" begs the question of whether lost profits or other consequential damages are among those properly avail-

---

**13.** Paragraph 9 of attachment 7–A is entitled "Damages," and reads:
  Notwithstanding anything contained herein, neither party shall be liable for any consequential or special losses or damages of whatsoever kind in connection with the performance or failure to perform this Agreement, including without limitation, loss of profits or business....

**14.** Paragraph 10 to attachment 7–A states that "[i]n the event of any inconsistency between the provisions of the Product Sales Agreement referred to above and the provisions hereof, the provisions of the Product Sales Agreement shall govern."

**15.** *See supra* note 10.

able remedies. Moreover, the White affidavit says nothing about the quite specific exclusion of lost profits in attachment 7–A; nowhere does White clearly state that it was his belief that lost profits were properly available under the terms of the agreement. And InterCarbon identifies no more compelling statement from the Lehner affidavit. The arbitrator was not required to imagine potential yet unrealized conflicts and to conclude that the evidence before him was insufficient for a decision. Not even Rule 56 summary judgment standards require such restraint. *See City of Yonkers v. Otis Elevator Co.*, 844 F.2d 42, 45 (2d Cir.1988) (summary judgment not prevented by "potential issue of fact").

The Court is mindful of the factors weighing against the arbitrator's decision to render judgment on the documentary evidence alone: the importance of hearings to most arbitration proceedings; the weakness of affidavits as bases for summary determinations; and the repeated desire of InterCarbon to present live testimony. Despite these considerations, the arbitrator's decision is reasonable and does not amount to misconduct. Hearings will not be required just to see whether real issues surface. If InterCarbon was going to make a clear demonstration of evidence that Messrs. White and Lehner intended to contradict the damages provision of attachment 7–A, there is no reason it could not have done so through their affidavits. Those affidavits were prepared for InterCarbon by Mr. White and Mr. Lehner, and the arbitrator was entitled to conclude that InterCarbon's case was no stronger than the ambiguous White affidavit. This case is thus distinguishable from those in which the existence of factual disputes was clear. *E.g., Teamsters, Chauffeurs, Warehousemen and Helpers, Local Union No. 506 v. E.D. Clapp Corp.*, 551 F.Supp. 570 (N.D.N.Y.1982), *aff'd*, 742 F.2d 1441 (2d Cir.1983).

The many additional cases cited by InterCarbon to the effect that parties to an arbitration are entitled to a hearing are equally unpersuasive. Petitioner's Memorandum at 3–6; Petitioner's Reply Memorandum at 11–17. It is of course true, generally speaking, that parties are entitled to be heard. The question concerns the circumstances under which a summary disposition based upon documentary submissions will be fair. The arbitrator's conclusion that no live hearings were necessary to resolve the contract issue in this case was not fundamentally unfair to InterCarbon, and will not be disturbed by this Court.

Finding no misconduct that would justify a reversal of the arbitrator's actions, this Court finds no reason for the award to be vacated, modified, or corrected, and instead finds that the award in this case must be confirmed. 9 U.S.C. §§ 9, 12. Judgment shall be entered against InterCarbon in the amount of $9,952.16, representing Caltraport's half of the arbitration costs.[16]

## CONCLUSION

Caltraport's motion to dismiss InterCarbon's petition to vacate the arbitration award is denied. InterCarbon's petition to vacate is also denied. Caltraport's petition to confirm the award is granted. Judgment is awarded to Caltraport in the amount of $9,952.16.

It Is So Ordered.

---

16. The "award" in this case consists of costs awarded to the defendant and the rejection of plaintiff's contract claims. InterCarbon has not challenged the amount of the costs.